STATE of Missouri ex rel. LEE AMERICAN FREIGHT SYSTEM, INC., Relator-Appellant,

v.

PUBLIC SERVICE COMMISSION of the State of Missouri, Tyre W. Burton, Chairman, E. L. McClintock, Frank W. May, William Barton and Donal D. Guffey, Commissioners, Respondents.

No. 52340.

Supreme Court of Missouri, En Banc.

Dec. 30, 1966.

Rehearing Denied Feb. 13, 1967.

Stewart & Bruntrager, Raymond A. Bruntrager, St. Louis, for appellant.

Wayne W. Waldo, Gen. Counsel, H. Burks Davis, Errol D. Taylor, Attys., Jefferson City, for respondents.

Orville Richardson, St. Louis, for Motor Carriers Council of St. Louis, Inc., amicus curiae.

Swanson, Midgley, Jones, Eager & Gangwere, Kenneth E. Midgley, Ralph M. Jones, Kansas City, for Highway Carriers Ass'n, Inc., amicus curiae.

FINCH, Judge.

Lee American Freight System, Inc., (Lee American) appeals from affirmance by the Circuit Court of an order of the Public Service Commission (Commission) which found it guilty of violation of Rule 37 of General Order No. 33–D (issued under the Missouri Bus and Truck Law) for failure to have a fire extinguisher on one of its trucks. The Kansas City Court of Appeals affirmed but, on application, we directed transfer of the case. We now decide it the same as if it came on direct appeal to this court.

The case was submitted to the Commission on an agreed statement of facts. Those facts pertinent to this appeal are as follows: Lee American transported two shipments from Detroit, Michigan, to its terminal in the City of St. Louis. One shipment from Pittsburgh Plate Glass Company was consigned to Park Warehouse, Inc., and the other from Wolverine Tube Company, Detroit, was consigned to its plant in St. Louis. The terminal and the two destination points were within the commercial zone of the City of St. Louis.

The trailer containing these shipments was delivered to Lee American's terminal on Hall Street on the night of May 12, 1963. The following day, using a tractor utilized exclusively for pickup and delivery within the commercial zone of the City of St. Louis, Lee American picked up the two shipments at the Hall Street terminal for the purpose of delivering them to the addresses to which they were consigned. While in the process of so doing, the truck was stopped for a check and the driver was arrested for failure to have a fire extinguisher as required in Rule 37 of General Order No. 33–D. The truck in fact had no fire extinguisher.

Lee American has an interstate permit, including a Missouri Public Service Com-

mission interstate permit, but does not have a permit to operate intrastate in Missouri.

No question is raised as to the right of the Commission to make regulations such as Rule 37. The sole issue on appeal is whether the operation of the vehicle in question by Lee American is subject to the Act governing motor carriers and the jurisdiction of the Commission. The question is entirely one of law involving an interpretation of the applicable statute.

■ The parties recognize that if the operation of the Lee American truck in the St. Louis commercial zone is exempted, it is pursuant to the provisions of § 390.030 (9) (all references are to RSMo 1959 and V.A.M.S., unless otherwise indicated). That particular subsection is as follows:

"390.030. *Vehicles exempted.*

"The provisions of sections 390.011 to 390.176 shall not apply to:

\*　　\*　　\*　　\*　　\*　　\*

"(9) The transportation of passengers or property for hire wholly within a munici-

pality, or between contiguous municipalities, or within a commercial zone as defined in subsection 14 of section 390.020, or within a commercial zone established by the commission pursuant to the provisions of subsection 4 of section 390.041; provided, the exemption in this subdivision shall not apply to motor carriers of persons operating to, from or between points located wholly or in part in counties now or hereafter having a population of more than three hundred thousand persons, where such points are not within the same municipality."

■ The Commission first contends that the exemption provided by § 390.030(9) is applicable to the load rather than the vehicle. Consequently, the fact that Lee American used this particular tractor solely for local pickup and delivery service is of no significance. This contention is based largely on a comparison of the language in subsection (9) with the wording of the other subsections of § 390.030.[1] In all of the other subsections the statute specifically refers to the vehicle as being exempted from the chapter. In some subsections (for

---

1. Section 390.030, except for subsection (9), which has already been set out in the opinion, is as follows:

"390.030. *Vehicles exempted.*

"The provisions of sections 390.011 to 390.176 shall not apply to:

"(1) Private carriers.

"(2) School buses.

"(3) Taxicabs.

"(4) Motor vehicles while being used exclusively to transport:

"(a) Stocker and feeder livestock from farm to farm, or from market to farm;

"(b) Farm or dairy products including livestock from a farm or dairy to a creamery, warehouse or other original storage or market;

"(c) Agricultural limestone or fertilizer to farms; or,

"(d) Property from farm to farm.

"(5) Motor vehicles of a carrying capacity of not to exceed five persons, or one ton of freight, when operated under contract with the federal government for carrying the United States mail and when on a trip provided in said contract.

"(6) Motor vehicles used solely in the distribution of newspapers from the publisher to subscribers or distributors.

"(7) Motor vehicles while being used exclusively in work for the state of Missouri or any civil subdivision thereof.

"(8) Freight-carrying motor vehicles duly registered and licensed in conformity with the provisions of chapter 301, RS Mo, for a gross weight of six thousand pounds or less; provided, that nothing contained in this subdivision shall be deemed to exempt the vehicles of driveaway operators from the commission's regulation.

\*　　\*　　\*　　\*　　\*　　\*　　\*

"(10) Street railroads as defined in subsection 5 of section 386.020, RSMo.

"(11) Motor vehicles, which are domiciled and licensed in another state, and whose operations in the state of Missouri are interstate in character and are limited exclusively to a municipality and its commercial zone.

"(12) Motor vehicles, commonly known as tow trucks or wreckers, designed and exclusively used in the business of towing or otherwise rendering assistance to abandoned, disabled and wrecked vehicles."

example, (1), (2) and (3)), it is provided simply that private carriers, school buses and taxicabs are exempted. This is true regardless of the load. In other subsections (such as (4), (5), (6) and (7)) the vehicle is excluded when it is hauling a certain type of load or is engaged in a particular kind of work. In each subsection, however, the exemption still is stated as being to the vehicle rather than to the load itself. On the other hand, in subsection (9) the exemption is to "transportation of passengers or property." The fact that this subsection makes no reference to motor vehicles when it exempts transportation of passengers or property indicates, according to the Commission, that the exclusion applies to the load and not the vehicle.

Having reached the foregoing conclusion, the Commission then asserts that the words in subsection (9), "transportation of passengers or property for hire wholly within a municipality, or between contiguous municipalities, or within a commercial zone * * *" have reference only to transportation which originates and terminates within the municipality or commercial zone and is of a purely local character. This would mean that the transportation here involved, which was directly connected with the movement of the two shipments from Detroit to particular locations in St. Louis and was interstate in character, would not qualify as purely local transportation originating and terminating in the commercial zone. Since the exemption, under the Commission's interpretation, is applicable to the load rather than the vehicle, it follows that the operation of Lee American's truck would fall within the jurisdiction of the Commission. The Commission asserts that the situation would have been the same if a purely local cartage company had picked up the two shipments at the Hall Street terminal and undertaken to deliver them to the ultimate consignees. The load still is interstate in character rather than local, and this, under the Commission's interpretation of subsection (9), places the operation within the Commission's jurisdiction.

In construing this statute, we must ascertain and give effect to legislative intent. In re Tompkins' Estate, Mo., 341 S. W.2d 866. In so doing, we have concluded that the exemption provided in § 390.030 (9) is applicable to the vehicle rather than the load for reasons which we shall enumerate.

We do not doubt that the local delivery of these two shipments was interstate in character as a continuation and completion of the shipments from the consignors at Detroit. This, however, is not made the determining factor in § 390.030. Subsection (11) so shows. It provides that motor vehicles, which are domiciled and licensed in a state other than Missouri and whose operations in Missouri are interstate in character and limited exclusively to a municipality or its commercial zone, are exempted from the chapter. Such operations are expressly recognized to be interstate in character. Under this section, if an Illinois firm operates its trucks into the St. Louis commercial zone only and this company hauls a shipment from Chicago to St. Louis and delivers the cargo directly to the consignee, the operation of the truck by the Illinois firm would be excluded from the regulation of motor carriers by the Commission. This indicates to us that the legislature, in drafting this section, was not following the philosophy that operations within a municipality or commercial zone would be exempted solely if they originated and terminated within the municipality.

Furthermore, if we were to adopt the interpretation of subsection (9) for which the Commission contends, we necessarily would conclude that the legislature intended to discriminate against local carriers in favor of vehicles not domiciled or registered in Missouri. If our hypothetical Illinois company hauled the shipment from Chicago to St. Louis and left it at a terminal instead of making delivery to the ultimate consignee, and a local cartage company picked up that shipment and completed the delivery, it would not be exempt under subsection (9) and would be

subject to the jurisdiction of the Commission. On the other hand, if the Illinois firm had completed the delivery, it would have been exempted under subsection (11) and would not have been subject to the jurisdiction of the Commission at all. We do not believe that the legislature so intended or so provided. This indicates to us that the interpretation of subsection (9) advanced by the Commission is erroneous.

■ There are additional reasons for our conclusion. The present chapter was adopted in 1951 (Laws 1951, page 547). Its title provided that it repealed certain sections which dealt with the regulation of motor carriers and enacted new sections "for the supervision, regulation and licensing of transportation of persons and property for hire over the public highways of the State of Missouri by motor vehicles". The section with which we are concerned was amended in 1959 (Laws 1959, House Bill No. 24), and its title provided that it repealed a section "relating to the regulation of motor carriers and contract haulers" and enacted a new section relating to the same subject. These titles indicate that it is vehicles which are exempted, and there is nothing in the titles to indicate that one of the subsections out of twelve was intended to provide an exemption to cargo or passengers and not to vehicles. It is proper to consider the title in construing the statute. In re Tompkins' Estate, supra. This conclusion is strengthened by the fact that there is a proviso within subsection (9) itself which starts, "provided, the exemption in this subdivision shall not apply to motor carriers * * *." This indicates to us that the philosophy and intent of the subsection is to provide an exemption to carriers. We observe that the Compiler of Statutes so treated the statute when he inserted the catchwords "Vehicles exempted" to precede the twelve subsections of the statute. (§ 390.030, RSMo 1959 and V.A. M.S. Cum.Pocket Parts, 1966, p. 35).

The Commission points out that prior to the enactment of the chapter in 1951, § 390.020(2), RSMo 1949, provided that the statute "shall not be so construed as to apply to motor vehicles used in the transportation of passengers or property for hire, operating over and along regular routes within any municipal corporation or a municipal corporation and the suburban territory adjacent thereto * * *" and that in the case of State ex rel. and to Use of Public Service Commission v. Blair, 347 Mo. 220, 146 S.W.2d 865, this court held that the quoted language exempted any motor vehicle operated exclusively within the corporate limits of a municipality. In so holding, the court said, l. c. 874: "If this construction is unsatisfactory to the public, it should be changed by the General Assembly soon to be in session, and not by either the Commission or the Court." It is the contention of the Commission that when the legislature shortly thereafter adopted the new statute, including subsection (9), in lieu of the statute which had been construed in the Blair case, it indicated an intention to make a change and limit the exemption to purely local transportation. We disagree for reasons we have enumerated heretofore. In addition, a comparison of the language in subsection (9) with certain language in the Interstate Commerce Act, 49 U.S.C.A. § 303(b) (8), indicates that the legislature probably borrowed some of the language of the federal statute and used it in subsection (9).[2] The federal act, 49

2. 49 U.S.C.A. § 303(b) (8): "The transportation of passengers or property in interstate or foreign commerce wholly within a municipality or between contiguous municipalities or within a zone adjacent to and commercially a part of any such municipality or municipalities, except when such transportation is under a common control, management, or arrangement for a continuous carriage or shipment to or from a point without such municipality, municipalities, or zone, and provided that the motor carrier engaged in such transportation of passengers over regular or irregular route or routes in interstate commerce is also lawfully engaged in the intrastate transportation of passengers over the entire length of such interstate route or routes in accordance with the laws of each State having jurisdiction".

U.S.C.A. § 303(a) (19), defines transportation to include all vehicles operated and used in the transportation of passengers or property. It indicates that the exemption therein provided is intended to apply to vehicles and not to cargo. Under these circumstances, we do not find in the phraseology used in subsection (9) the expression of an intention to change the exemption of local transportation to one limited to property or passengers moving wholly within the municipality instead of an exemption of carriers operating wholly within the municipality.

Counsel for the Commission conceded on oral argument of this case that the practical effect of the position asserted by the Commission would be to require all local cartage companies to come within the jurisdiction of the Commission and to comply with its regulations. When the cartage company was hauling a purely local shipment, the Commission regulations would not be applicable, but unless the cartage company limited itself solely to such local movements of cargo, the practical effect would be that the cartage company would have to qualify its vehicles with the Commission. The shipper, according to the Commission, forms an intention when he makes a shipment as to whether it is to go outside the municipality, and if it is, then the shipment is not exempt. This would necessitate ascertainment by the cartage company of the intent of the shipper before accepting cargo, and would require the cartage company to decline any shipment destined to or from an area outside the commercial zone if it desired to remain exempted under § 390.030(9). This, in our judgment, is not what the legislature intended.

The Commission asserts that this court in the case of State ex rel. Missouri Pacific Freight Transport Co. v. Public Service Commission of Missouri, Mo., 295 S. W.2d 128, 135, has construed subsection (9) as not exempting transportation which is merely a continuation of transportation to or from a point outside the municipality and

its commercial zone. It contends the Missouri Pacific case rules the issue here. That case actually concerned an application by the Missouri Pacific Freight Transport Company for an enlargement of its authority, and what the court said was related to that question, but if the language of the court is inconsistent with the conclusion we reach herein, it is to that extent overruled.

The judgment of the Circuit Court and the order of the Public Service Commission are reversed.

All concur and WOLFE, Special Judge, concurs.

EAGER, J., not sitting.

