**STATE of Missouri ex rel. Marshall McTAGUE, Relator-Respondent,**

v.

**James S. McCLELLAN et al., Respondents-Appellants,**

**Edward R. Joyce, Intervenor-Respondent.**

No. 36501.

Missouri Court of Appeals, St. Louis District, Division One.

Jan. 6, 1976.

Jack L. Koehr, City Counselor, Timothy G. Noble, Asst. City Counselor, St. Louis, for respondents-appellants.

Michael W. O'Reilly, St. Louis, for relator-respondent.

Edward R. Joyce, St. Louis, for intervenor-respondent.

RENDLEN, Judge.

This is an appeal from Writ of Mandamus issued by the Circuit Court of the City of

St. Louis commanding the Board of Election Commissioners of the City of St. Louis to conduct the door-to-door canvass required by §§ 118.330–118.350, RSMo 1969.[1]

Since appellants [respondents below] have expressly abandoned all issues on this appeal except the question of statutory construction, our statement of facts will be brief. In 1974 appellants announced plans to dispense with the door-to-door canvass of registered voters required by the statutes and to instead rely upon a canvass by mail which appellants opined would be equally effective and less expensive. Respondents [relators below] sought mandamus in the Circuit Court of the City of St. Louis to require the door-to-door canvass and following hearing on January 23, 1974, the preemptory writ issued, leading to this appeal.

Appellants' sole contention is the court erred in issuing the writ because the pertinent statutory provisions are directory, not mandatory; that the statutes prescribe only technical procedures for conduct of elections; and that the statutes' door-to-door canvass requirements call for nothing more than discretionary action by the board. We do not agree.

■ As explained by our Supreme Court, the mandatory-directory dichotomy ordinarily "arises in determining whether failure to comply with a statutory provision makes an act or proceeding void . . . [w]hen the statute creates an official duty in the interest of the public it is a different matter; and when the General Assembly imposes such a duty upon a public officer, he has no discretion as to whether or not it should be performed." *State ex rel. Taylor v. Wade*, 360 Mo. 895, 231 S.W.2d 179, 181–2 (en banc 1950). Here we do not search for the effect of the board's failure to conduct door-to-door canvass or to determine whether such failure would render such acts void or voidable; we instead are called on to determine if board may in its discretion

discontinue the door-to-door canvass and substitute a procedure of its own devising. Stated otherwise, the issue may be described as whether under the statutes, appellants have discretion to select what they consider an appropriate method of canvassing or are the duties ministerial, in which case appellants may be compelled to perform the acts prescribed by law.

■ Chapter 118, V.A.M.S., regulating voter registration and conduct of election in cities of over 600,000 inhabitants is controlling here. Section 118.330 relative to verification lists of registered voters is as follows:

"Immediately after the close of registration before each election preceding which a canvass is required, *the board shall* have verification lists prepared for each precinct. *Such list shall* have the names and addresses of all voters registered in the precinct arranged in the same order as the precinct registers. *A canvass shall be made* before each general state and county election, each state and county primary and primary city elections." (Emphasis supplied).

Section 118.340, detailing the nature of the canvass and duties of precinct canvassers, provides in pertinent part as follows:

"The two clerks of election of opposite politics designated by the board of election commissioners *shall be* constituted canvassers of the precinct for which they are appointed and, at such time as the board may direct, *said two clerks shall,* each having one of the verification lists, *go together and canvass* such precinct, calling at each dwelling place or each house where anyone may reside in such precinct and each dwelling place as indicated upon said verification lists . . . In making the canvass, *the canvassers shall make special inquiry* at the residence as designated in the registry and verification lists as to all the persons so

---

1. All statutory references are to RSMo 1969.

registered as qualified voters. In making such canvass, *the clerks shall meet* at eight o'clock in the forenoon of the first day at the office of the board to receive necessary supplies and instructions and *shall proceed with such canvass as herein directed.* If either of the canvassers shall fail to appear . . . the chairman or secretary of the board . . . *shall immediately appoint* a canvasser of the same politics as the one absent or failing to act." (Emphasis supplied).

Section 118.350 provides procedures for notifying persons found by the canvasser not residing in their previous place of residence to show cause why their names should not be erased from the registry.

It is apparent from these sections the general assembly intended that door-to-door canvass be regularly conducted in the manner prescribed. Section 118.330 requires such canvass be made before each of several named general and primary elections. Section 118.340 directs the board to "designate" clerks from the precincts as "canvassers" who "shall . . . go together and canvass such precinct, calling at each dwelling place or each house . . ." The language of § 118.340 "at such time as the board may direct" gives the board limited discretion only as to the selection of the day and time (within the general time frame prescribed by the statutes) for the required door-to-door canvass. We find the use of the word "shall" in §§ 118.330, 118.340 and 118.350, was intentional and the detailed procedures set forth therein are ministerial acts which the board has no authority to alter. See *State ex rel. Hopkins v. Stemmons*, 302 S.W.2d 51, 54[4] (Mo.App.1957) in which the statutory language "shall be given" was interpreted. There it was held that the use of "shall" in a statutory provision generally indicates a mandate and the court noted "that 'shall' and 'may' have, at times, been used carelessly and indiscriminately . . . and that our courts have not hesitated to hold that the manifest intent of a legislative enactment will prevail over the literal sense of its terms . . . Nevertheless, the *general rule* is that 'shall' indicates a mandate . . . And, the use of mandatory language in one part of a statute and of permissive language in another part of the same statute . . . sometimes has been thought to have been indicative of purposeful selection, requiring literal interpretation of the language employed."

Immediately following the canvass provisions of §§ 118.330–118.350, the legislature by § 118.360 has provided for *investigation* of the residency and other qualifications of voters "at any time it (the board) may deem necessary" or when information concerning these matters is brought to the board's attention. For this purpose the legislature has provided, "a canvass of all precincts or part thereof *may be made by mail.* Such investigations may be made at any time ordered by the said board and shall be conducted whenever and in such manner as it shall direct . . ." (Emphasis supplied). Use of the word "may" in § 118.360 for canvass by mail relative to such investigations, coupled with clear grants of discretion in ordering such supplemental investigations, as contrasted with the use of "shall" in the three preceding sections, supports our conclusion that use of the mandatory language "shall," in §§ 118.330, 118.340 and 118.350, was intentional. We hold the detailed procedures contained therein are ministerial acts which the board has no authority to alter and is bound by law to perform.

Judgment affirmed.

WEIER, P. J., and DOWD, J., concur.