L. F. H., Petitioner-Respondent,

v.

R. L. H., Respondent-Appellant.

No. 37481.

Missouri Court of Appeals,
St. Louis District,
Division One.

Oct. 5, 1976.

Motion for Rehearing and for Transfer to Supreme Court Denied Nov. 12, 1976.

Gordon F. Webb, Clayton, for respondent-appellant.

Earl L. Davis, St. Ann, for petitioner-respondent.

DOWD, Judge.

Appellant challenges the decree of the trial court, dissolving the marriage of respondent and appellant, insofar as that decree awarded custody of the parties' minor daughter to respondent and failed to divide the marital real property between the parties.

Respondent-L.H. and appellant-R.H. were married on October 22, 1965. The parties' daughter was born on January 24, 1970. The parties separated on April 17, 1975 after respondent and a co-worker decided to leave their respective spouses and live together. Respondent took her daughter and moved into an apartment with Mr. W. Respondent testified that her marriage to appellant began to deteriorate several years before she became acquainted with Mr. W. but that she and Mr. W. planned to marry after they had secured dissolutions. Respondent, her daughter, and Mr. W. have lived as a family unit throughout the period of separation. However, appellant has had custody of his daughter on alternate weekends, except for a one month period following appellant's answer to respondent's divorce petition.

Both appellant and respondent are employed. Respondent earns approximately $9,000 a year, and appellant earns approximately $16,000 a year. The parties attempted to divide their personal property in half when they separated. At the time of their separation, the parties did not attempt to divide their real property which they owned as tenants by the entirety. The appellant continued to live on this property.

The decree of dissolution awarded primary custody of the parties' daughter to respondent and granted appellant reasonable rights of visitation and temporary custody. The decree denied respondent's request for maintenance and confirmed the parties' division of personal property. Appellant was ordered to pay $30.00 per week for support of his daughter and was ordered to pay the costs of the proceedings. The decree omitted any reference to the marital real property.

■ Since the trial court's decree of dissolution did not divide the real property of the marriage, the decree is not a final order and is not appealable. *Pendleton v. Pendleton*, 532 S.W.2d 905 (Mo.App.1976). While neither of the parties question our jurisdiction to consider this appeal, we have a duty to examine our jurisdiction sua sponte. *Huffman v. Department of Revenue*, 523 S.W.2d 107, 108 (Mo.App.1975).

■ If the trial court fails to divide the marital property between parties to a dissolution of marriage decree under Missouri's Divorce Reform Act, §§ 452.300 et seq. RSMo Supp. 1973, the trial court has not exhausted its jurisdiction. While the decree is not a final decree, upon proper notice, the trial court can vacate, modify, or correct any part of the decree entered. And, until the trial court exhausts its juris-

diction, the appellate court is precluded from exercising its jurisdiction. *Pendleton v. Pendleton, supra* at 906. The trial court can not "abdicate its jurisdiction to decide the parties' property rights." *Pendleton v. Pendleton, supra.*

Section 452.330(1), RSMo Supp. 1973, provides that the trial court "shall divide the marital property in such proportions as the court deems just" (emphasis added) after considering the factors enumerated in Section 452.330(1). Other factors which indicate a proper accommodation of the needs of the parties should also be considered. *In re Marriage of Heddy,* 535 S.W.2d 276, 281 (Mo.App.1976). By using the word "shall", the legislature has indicated that the trial court must specifically decree a division of the marital property upon dissolution of the marriage. See *Waeckerle v. Board of Zoning Adjustment,* 525 S.W.2d 351, 358 (Mo. App.1975); *State ex rel. McTague v. McClellan,* 532 S.W.2d 870, 872 (Mo.App. 1976).

The conclusion that the legislature intended to require dissolution decrees to specifically dispose of the marital property is bolstered by the enumeration, in the same statutory section, of the factors which should be considered in reaching the determination. As a whole, Section 452.330 evinces an intent that the trial court's division of marital property is a mandatory duty, and the legislature's use of the word "shall" is consistent with that purpose. *State ex rel. McTague v. McClellan, supra.*

The trial record presented to this court does not indicate that the trial judge gave any consideration to the division of the parties' real property in formulating the decree of dissolution. The decree makes no mention of the real property even though the decree divides the parties' personal property. According to the facts contained in the transcript, the parties' real property was the major asset of the marriage and subject to the parties' major obligation. Appellant and respondent owned their home as tenants by the entirety. The property was worth, according to the respondent's estimate, $30,000.00 and was subject to an $18,-000.00 mortgage. The trial court must make some disposition of this property and its encumbrance in the dissolution decree before the decree becomes final.

Because the trial court made no disposition of the realty, this court is deprived of its jurisdiction to consider appellant's challenge to the trial court's custody order granting custody of the parties' minor daughter to respondent. *Pendleton v. Pendleton, supra.*

In his brief, appellant strenuously contested the custody order of the trial court. Appellant argues that because respondent is living in open adultery with a married man and because the child is living in that environment, the best interest of the child requires that he be given custody of his daughter. Should the appellant again appeal the trial court's custody order after the trial court makes a division of the realty, we would be faced with the task of reviewing the trial court's order upon both the law and the evidence. Rule 73.01. The evidence relevant to custody contained in the present transcript does not afford the type of record necessary for the appellate court to "function with a 'degree of confidence in the accuracy of our final judgment.'" *V. M. v. L. M.,* 526 S.W.2d 947, 949 (Mo.App. 1975). This is especially true when the custody of a minor child is involved. We would be forced to remand the case to the trial court for further hearing on the custody issue. To forestall such an appeal, we therefore suggest that a more extensive hearing on the custody issue be conducted by the trial court before the trial judge enters his final decree.

As a guide to the trial court, we set forth our reasons for finding the present transcript an unsatisfactory record for appeal. On examination of the transcript, we observe that there is a dearth of testimony and evidence pertaining to the question of custody and the best interest of the child. The transcript of testimony is 50 pages long; and only 15 pages of this testimony, consisting solely of the parties' testimony, relate to the custody issue. No other evidence, such as the daughter's records from

childcare centers, which she attended, was produced, nor was there inquiry into the child's physical condition. Almost no evidence was presented concerning the daughter's welfare should she be placed with her father. Most of the testimony given concerned the disadvantages of giving respondent custody of her daughter, and consisted of evidence that respondent was engaged in an ongoing, open adulterous relationship to which the daughter would be exposed as a member of respondent's household.

 It is true that a mother's adulterous conduct does not automatically mark her as unfit to have custody of her child. *In re Marriage of Cook*, 532 S.W.2d 833, 837 (Mo.App.1975). However, moral lapses of the parents should be considered by the trial court *as this conduct bears upon the custodial welfare of the child. L. H. Y. v. J. M. Y.*, 535 S.W.2d 304 (Mo.App.1976). We believe that respondent's conduct is an appropriate consideration in this case because the daughter will be exposed to respondent's conduct. The determination of what is in the daughter's best interest must include a consideration of the effect of respondent's ongoing adulterous conduct upon the child's values and character formation. In her testimony, respondent asserted that she did not believe that her relationship with Mr. W. would harm her daughter "because [she didn't] feel that she [was] of the age she would understand what is right and what is wrong." However, a child's first impression of right and wrong is acquired in the home. This court has recently recognized the potential impact on the child of the moral environment created by the custodial parent, observing that:

"Certain conduct once looked upon by society with opprobrium does not carry the social or private stigma it once did a few short years ago. Such conduct may even be socially 'approved'. But private personal conduct by a parent which could well have an effect on children during the years in which their character, morality, virtues and values are being formed cannot be ignored or sanctioned by the courts. Private conduct by a parent in

the presence of a child . . . may well influence his or her young, impressionable life." *L. H. Y. v. J. M. Y., supra* at 308.

A more extensive hearing on the custody issue would help clarify whether respondent's or appellant's custody is in the daughter's best interest. Inquiry should be made into appellant's ability to care for his daughter and his conduct as it would affect the child's welfare. The trial court could order an investigation and report concerning custodial arrangements under Section 452.390, RSMo Supp. 1973. Since the parties' daughter has attended childcare centers since the age of 3, such childcare centers could also be a source of information concerning the welfare of the child.

We have discussed what we believe to be the paucity of evidence upon which the trial court's custody order is based as a guide to the trial court to hold a more detailed hearing. As said, we lack jurisdiction to consider this appeal because the trial court has not yet divided the parties' marital real property. *Pendleton v. Pendleton, supra.*

Appeal is dismissed.

WEIER, P. J., and STEWART, J., concur.