Georgia H. CORDER,
Appellant-Respondent,

v.

Nathan CORDER, Respondent-Appellant.

Nos. KCD 27665, KCD 27956.

Missouri Court of Appeals,
Kansas City District.

Jan. 31, 1977.

Charlotte P. Thayer, Thayer, Gum, Ernst Y. Wickert, Grandview, for respondent-appellant.

Robert W. Spangler, Robert B. Reeser, Jr., Crouch, Crouch, Spangler & Douglas, Harrisonville, for appellant-respondent.

Before SHANGLER, P. J., and SWOFFORD and SOMERVILLE, JJ.

SOMERVILLE, Judge.

This is a dissolution of marriage proceeding involving cross-appeals. Neither party questions the dissolution of the marriage; however, the opposite is true with respect to all other provisions of the decree.

At the very threshold of appellate review this court is faced with a basic question of decisive significance. Does jurisdiction lie in this court to entertain the cross-appeals? Although neither party has questioned this court's jurisdiction, it may not be conferred by waiver, silence, acquiescence, or consent, and it is incumbent upon this court to sua sponte inquire into and determine whether it has jurisdiction. *Kansas City Power & Light Co. v. Kansas City*, 426 S.W.2d 105, 107 (Mo.1968); *L. F. H. v. R. L. H.*, 543 S.W.2d 520, handed down October 5, 1976, by the Missouri Court of Appeals, St. Louis District; and *Taney County v. Addington*, 296 S.W.2d 129, 129[1] (Mo.App.1956).

The vexing question of whether jurisdiction lies in this court to entertain the cross-appeals emerges as follows: The family home, "Lot 91, Silver Lake, a subdivision in Cass County, Missouri", was acquired subsequent to the marriage but prior to the effective date of the Dissolution of Marriage Act (§§ 452.300, et seq., RSMo Supp. 1973), and title thereto was vested in the wife and husband as tenants by the entirety. All furnishings and furniture therein, and all other personal property not otherwise specifically mentioned, was apparently acquired subsequent to the marriage but prior to the effective date of the Dissolution of Marriage Act and treated as owned by the wife and husband as tenants by the entirety. The decree below contained, inter alia, the following provision: "That the following described real estate, to-wit: Lot 91, Silver Lake, a subdivision in Cass County, Missouri, together with all furnishings and furniture located therein and all other personal property are hereby declared to be marital property; that Petitioner and Respondent shall each own an undivided one half (½) interest therein as tenants in common." A colloquy between the trial court and counsel occurred prior to entry of the decree with respect to the real property, at which time the trial court stated: "I don't care what they do with it. They each have a half interest in it. I'm going to dissolve the marriage, leave them right where the

real estate law put them which is the way it should be."

Notwithstanding the fact that the wife does not question this court's jurisdiction to entertain the cross-appeals, she vigorously contends, among other points relied upon, that the trial court's purported division of "marital property" lacked "finality" and did not constitute a "just" division as contemplated in and commanded by Section 452.-330, RSMo Supp.1973.

It is appropriate at this point to quote Section 452.330, supra, in full in order to put the jurisdictional question in proper perspective:

"1. In a proceeding for nonretroactive invalidity, dissolution of the marriage or legal separation, or in a proceeding for disposition of property following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse or lacked jurisdiction to dispose of the property, the court shall set apart to each spouse his property and *shall divide the marital property in such proportions as the court deems just after considering all relevant factors including*:

(1) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(2) The value of the property set apart to each spouse:

(3) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children; and

(4) The conduct of the parties during the marriage.

"2. For purposes of sections 452.300 to 452.415 only, 'marital property' means all property acquired by either spouse subsequent to the marriage except:

(1) Property acquired by gift, bequest, devise or descent;

(2) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent;

(3) Property acquired by a spouse after a decree of legal separation;

(4) Property excluded by valid agreement of the parties; and

(5) The increase in value of property acquired prior to the marriage.

"3. *All property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation is presumed to be marital property regardless of whether title is held individually or by the spouses in some form of coownership such as joint tenancy, tenancy in common, tenancy by the entirety, and community property.* The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection 2.

"4. The court's order as it affects distribution of marital property shall be a final order not subject to modification.

"5. A certified copy of any decree of court affecting title to real estate shall forthwith be filed for record in the office of the recorder of deeds of the county and state in which the real estate is situate by the clerk of the court in which the decree was made, and the filing fees shall be taxed as costs in the cause." (Emphasis added.)

The husband counters the wife's assertions that the purported division of "marital property" lacked "finality" and did not constitute a "just" division as contemplated in and commanded by Section 452.330, supra, with the following argument. Under "prior law, upon divorce, any property held in tenancy by the entirety, is converted to a tenancy in common with an undivided ½ interest in each party." He cites *Allan v. Allan,* 364 S.W.2d 578, 582 (Mo.1963), and Section 442.450, RSMo 1969, to support this statement with respect to the real property. Although not cited by the husband, *Nye v. James,* 373 S.W.2d 655, 659 (Mo.App.1963), supports the statement with respect to the personal property. As a capstone, the husband argues that any division of "marital property" under Section 452.330, supra, giv-

ing either spouse any interest other or greater than an undivided one-half (½) interest as tenants in common in property which was acquired as tenants by the entirety prior to the effective date of Section 452.330, supra, "would be unconstitutional in that it would operate to divest vested rights, impair obligation of contract, and deprive persons of property without due process of law." In support thereof the husband cites various provisions of the state and federal constitutions, namely: Missouri Constitution, Art. I, §§ 10 (due process) and 13 (prohibiting the enactment of laws "impairing the obligation of contracts" or which are "retrospective" in their "operation"); and U.S. Constitution, Art. I, § 10 (prohibiting any state from passing any law "impairing the Obligation of Contracts") and Amend. XIV, § 1 (due process). At this juncture it is important to take cognizance of the true nature and thrust of the husband's constitutional argument. He does not contend that Section 452.330, supra, is unconstitutional. He does contend however that construing Section 452.330, supra, as being applicable to property acquired as tenants by the entirety prior to its effective date would be unconstitutional. See *McManus v. Park*, 287 Mo. 109, 229 S.W. 211 (1921).

█ As the controversial provision of the decree purported to do nothing more than declare that the spouses each owned an undivided one-half (½) interest in the "marital property" as tenants in common, as would have occurred by operation of law prior to the effective date of Section 452.-330, supra, there was no division of "marital property" (as hereafter discussed) as contemplated in and commanded by Section 452.330, supra, unless the property, by virtue of the date it was acquired, was exempt from the control and application of Section 452.330, supra, because of the constitutional grounds raised by the husband. If a division of the "marital property" as required by and envisioned in Section 452.330, supra, was not precluded on constitutional grounds, then the trial court did not exhaust its jurisdiction and the decree was not a final judgment or order and was not

appealable. *L. F. H. v. R. L. H.*, supra; *Pendleton v. Pendleton*, 532 S.W.2d 905, 906 (Mo.App.1976); Section 512.020, RSMo 1969; and Rules 81.01 and 81.04. As pointed out in *Pendleton v. Pendleton*, supra, at 906, and quoted with approval in *L. F. H. v. R. L. H.*, supra, a trial court cannot "abdicate its jurisdiction to decide the parties' property rights. . . ."

This court first turns to the husband's premise that constitutional considerations place the "marital property" in question beyond the reach of Section 452.330, supra, because of its acquisition date. It has been held in this state, as well as in other jurisdictions, that the marital relation is subject in all respects to the reasonable exercise of the state's police power. *Brawner v. Brawner*, 327 S.W.2d 808, 815 (Mo. banc 1959), *cert. denied* 361 U.S. 964, 80 S.Ct. 595, 4 L.Ed.2d 546 (1960); and *Rothman v. Rothman*, 65 N.J. 219, 320 A.2d 496, 501 (1974). As cogently stated in *Maynard v. Hill*, 125 U.S. 190, 205, 8 S.Ct. 723, 726, 31 L.Ed. 654, 657 (1888), "[m]arriage, as creating the most important relation in life, as having more to do with the morals and civilization of a people than any other institution, has always been subject to the control of the legislature . . . [and] [t]hat body prescribes the age at which parties may contract to marry, the procedure or form essential to constitute marriage, the duties and obligations it creates, its effects upon the property rights of both, present and prospective, and the acts which may constitute grounds for its dissolution."

█ If Section 452.330, supra, insofar as it applies to "marital property" acquired prior to its effective date and held by a husband and wife as tenants by the entirety, reasonably furthers a valid public interest and is not otherwise palpably unreasonable or unduly discriminatory, then it is immune from the constitutional attacks launched by the husband. *Brawner v. Brawner*, supra, at 815; and *Bellerive Investment Co. v. Kansas City*, 321 Mo. 969, 981, 13 S.W.2d 628, 634 (1929). As stated in *Bellerive Investment Co.*, supra, 13 S.W.2d

at 634, "[i]t has been definitely and clearly established and settled, by the decisions of this court and of the federal Supreme Court, that a statute or a municipal ordinance, which is fairly referable to the police power of the state or municipality, and which discloses upon its face, or which may be shown aliunde, to have been enacted for the protection, and in furtherance, of the peace, comfort, safety, health, morality, and general welfare of the inhabitants of the state or municipality, does not contravene or infringe the several sections of the state and federal Constitutions invoked [1] by the appellants herein, and cannot be held invalid as wrongfully depriving the appellants of any right or privilege guaranteed by the Constitution, state or federal; the reason and basis underlying such decisions being that the personal and property rights of the individual are subservient and subordinate to the general welfare of society, and of the community at large, and that a statute or ordinance which is fairly referable to the police power has for its object the 'greatest good of the greatest number.'" (Citing cases.) The husband's argument that Section 452.330, supra, if applied to tenancy by the entireties property acquired prior to its effective date, would "impair obligation of contract" as prohibited by Art. I, § 10 of the Constitution of the United States, is laid to rest by *Maynard v. Hill,* supra. Therein it was held that the marriage relation, and reciprocal rights arising therefrom, do not come within the prohibition against state legislation impairing the obligation of contracts. The wisdom of legislation enacted in exercise of the police power is not open to judicial review—judicial review is limited to determining whether a real and substantial ·affinity exists between such legislation and the discernible public interest sought to be served and whether it is so palpably unreasonable or unduly discriminatory as to unjustifiably infringe upon constitutionally guaranteed rights. *State ex rel. Kansas City v. Public Service Com'n.,* 524 S.W.2d 855, 862 (Mo. banc 1975).

Public policy sought to be served by Section 452.330, supra, is multi-faceted and self-evident. Previously, the contributions of a wife regarding the accumulation of property during the marriage relation, either in the sense of direct financial contributions or in the sense of indirect contributions by virtue of her services as a homemaker, were largely ignored. Regarding property accumulated during the marriage relation and held in the husband's name alone, a wife, even though an innocent and injured party, upon severance of the marriage had only the concept of alimony (subject to termination on remarriage of the wife or the death of the husband, or future reduction occasioned by the husband's diminished financial ability), tenuous at best, to which to turn. Regarding property accumulated during marriage and held by the husband and wife as tenants by the entirety, the respective contributions of the spouses, whether direct or indirect in nature, were of no moment whatsoever, and their rights and interests in such property were regimented by operation of law. Upon termination of the marriage relation, fixing the rights and interests of a wife and husband in such property by operation of law, due to its inherent inflexibility, made it impossible to accommodate any consideration of what might be a just or fair division. If a just or fair division occurred in a given case it was a matter of sheer chance rather than a knowledgeable and responsible determination. Moreover, the division of property by operation of law was a halfway measure at best since it left the parties with a unity of possession after the marriage bond was severed, which, in many instances, continued rather than alleviated the acrimony and discord which prompted

1. In addition to other provisions of the Constitution of Missouri, 1875, appellants invoked Art. 2, § 15 (whose present counterpart, Art. I, § 13, Constitution of Missouri, 1945, is relied upon by the husband in this case) and Art. 2, § 30 (whose present counterpart, Art. I, § 10, Constitution of Missouri, 1945, is relied upon by the husband in this case); appellants also invoked Amend. XIV, § 1, of the Constitution of the United States (also relied upon by the husband in this case).

scission of the marriage relation and relegated the parties to further litigation in order to sever the relationship attached to the common ownership of property.

Section 452.330, supra, seeks to redress the patent inequity and rancorous aftermath heretofore attached to the division of property accumulated during the course of a marriage which now falls within the definition of "marital property". By the same token, it seeks to effectively minimize the necessity for recourse to further litigation to completely sever all relations between the parties. By so doing, the application of Section 452.330, supra, to "marital property" acquired both prior and subsequent to its effective date (regarding causes of actions within the purview of the Dissolution of Marriage Act) serves to promote the general welfare, seeks to achieve a valid public interest, constitutes a legitimate exercise of the state's police power, and is not so palpably unreasonable or unduly discriminatory as to render it vulnerable to the constitutional attacks leveled against it by the husband. Any other result, respecting "marital property" acquired prior to the effective date of Section 452.330, supra, would place one or more generations of married couples whose marriage is dissolved pursuant to the Dissolution of Marriage Act at a decided disadvantage in comparison with subsequent generations of married couples whose "marital property" is acquired after the effective date of Section 452.330, supra. To say that the legislature intended such a disparate, inequitable, and chaotic result strains credulity to the breaking point.

This court is not unmindful that this case was tried during the nascency of the Dissolution of Marriage Act. The innovative nature of the Dissolution of Marriage Act, coupled with its sparsity of statutory guidance and direction, spawned understandable uncertainty at the trial level and an inordinate number of appeals. Nonetheless, the trial court had no discretion or leeway to divide or not divide the "marital property" on a "just" basis, it was inexorably commanded to do so—"the court * *

*shall divide* the marital property in such proportions as the court deems *just* after considering all relevant factors" including those specifically enumerated. Section 452.330, supra. (Emphasis added.) As held in *L. F. H. v. R. L. H.,* supra, "[b]y using the word 'shall', the legislature has indicated that the trial court must specifically decree a division of the marital property upon dissolution of the marriage."

When called upon to construe a statute, a court's first and foremost duty is to ascertain and give effect to the legislative intent expressed in the statute. *Flarsheim v. Twenty Five Thirty Two Broadway Corp.,* 432 S.W.2d 245, 251 (Mo.1968); *State ex rel. Lee American Freight System, Inc. v. Public Service Commission,* 411 S.W.2d 190, 193 (Mo. banc 1966); *St. Louis County v. State Highway Commission,* 409 S.W.2d 149, 152 (Mo.1966); and *In re Myers' Estate,* 376 S.W.2d 219, 223 (Mo. banc 1964). Certain well established and recognized rules aid in doing so. The goal or manifest purpose sought to be achieved by a statute, in light of conditions existing at the time of its enactment, is one such rule. *In re Tompkins' Estate,* 341 S.W.2d 866, 872 (Mo.1960); *State ex rel. M. J. Gorzik Corp. v. Mosman,* 315 S.W.2d 209, 211 (Mo.1958); and *Central Bank of Clayton v. State Banking Board of Missouri,* 509 S.W.2d 175, 182 (Mo.App.1974).

A goal or evident purpose of the Dissolution of Marriage Act was to eliminate, or in any event to minimize, many of the anachronistic vestiges which surrounded rights to property acquired during marriage in the event the marriage relation was severed. As opposed to the old order, the Dissolution of Marriage Act views the acquisition of "marital property" as a partnership endeavor, and it enunciates a standard for dividing such property which is flexible enough to weigh and balance the respective contributions of the spouses and to accommodate consideration of manifest justness and fairness. It appears that an additional goal or evident purpose was to eliminate any carryover of the animosity which brought about severance of the mar-

riage by terminating, without recourse to further litigation, all unity of possession, as well as unity of title, between the spouses when consummating a "just" division of "marital property". A division of "marital property" which stops short of severing the relationship attached to the common ownership of property "should be reserved for the unusual situation where the economics involved call for such a solution." *Davis v. Davis,* 544 S.W.2d 259, handed down November 20, 1976, by the Missouri Court of Appeals, Kansas City District. As pointed out in *Davis,* "a division which leaves the parties tenants in common in personal property susceptible to division in kind should be avoided in the interest of preventing the unnecessary extension of disputes and ill feeling. Although resort to such device with respect to real estate probably should not be absolutely precluded, again a tenancy in common solution should be reserved for the unusual situation where the economics involved call for such a solution."

Section 452.330, supra, provides that all property within the definition of "marital property", whether title is held "individually" or "by the spouses in some form of coownership such as joint tenancy, tenancy in common, tenancy by the entirety, and community property", "shall" be divided "in such proportions as the court deems just after considering all relevant factors" including those specifically enumerated in subparagraphs (1), (2), (3), and (4) of paragraph 1 thereof. Section 452.330, supra, viewed in its contemporary context and with awareness of the patent inequities and aftermath of rancor and further litigation which it sought to rectify and eliminate, leaves no doubt that the legislature intended a division of "marital property" which would effect a complete severance of all unity of possession, as well as unity of title, between the spouses, excepting only "the unusual situation where the economics involved call for" (*Davis v. Davis,* supra) a division which stops short of severing the relationship attached to the common ownership of property. In those "unusual situation[s]" where a "tenancy in common solution" is resorted to for dividing either real

or personal property falling within the definition of "marital property" because of the "economics involved"—the exception rather than the rule—the trial court should specifically state its reasons for doing so in its decree so that it will be apparent to an appellate court that the review is from a judgment which comports with the requirements of Section 452.330, supra, for the division of "marital property" and thus presents a final judgment ripe for appeal.

The legislature, to the consternation of many members of the bench and bar, failed to statutorily specify any particular power or powers which the courts could or should employ to implement divisions of "marital property" contemplated in and commanded by Section 452.330, supra. Understandably, this may have accounted for the lack of a final judgment in the instant case. This court concludes that specificity was wisely avoided by the legislature. The relatively short history of the Dissolution of Marriage Act in this state, as gleaned from a case by case review, has already vividly demonstrated a wide diversity between the type and value of items of property comprising the whole of the "marital property" to be divided. Because of its diversified nature, it would be difficult, if not impossible, in many instances to effect a "just" division solely on an item for item basis; furthermore, the adaptability of a particular method for implementing a division of "marital property" in one case might be wholly inadaptable in another case. Fortunately, the legislature had the prescience to avoid delineating or suggesting particular "methods" or "mechanics" for apportioning "marital property" subsequent to judicial determination of what constituted a "just" division comportable with Section 452.330, supra. Otherwise, it would have incurred the risk of delineated or suggested "methods" or "mechanics" being construed or deemed as all-inclusive and, if such occurred, the paramount goal of a "just" division of "marital property" might be defeated in certain cases.

The ultimate goal to be achieved in every division of "marital prop-

erty" is a "just" division which accords in all respects with the intent and purpose of Section 452.330, supra. Once the interests of the respective spouses in the "marital property" have been judicially determined according to Section 452.330, supra, the power to apportion to each spouse his or her share is not statutorily circumscribed by any rigid "methods" or "mechanics". The power to do so is statutorily rooted and virtually unlimited so long as it effects a division contemplated in and mandated by Section 452.330, supra. As held in *Claunch v. Claunch*, 525 S.W.2d 788, 791 (Mo.App. 1975), "the power given the trial court by § 452.330 (par. 1) to 'divide the marital property' includes the powers necessary to render effective the power to divide."

The record in the instant case fails to reveal any "economics involved" which would justify leaving either the real or personal property comprising the "marital property" vested in the parties as tenants in common. Perforce, the decree entered by the trial court did not constitute a division of "marital property" as contemplated in and mandated by Section 452.330, supra, and for that reason was not a final judgment and order, and was not appealable.

Appeals dismissed.

All concur.