**Sidney N. DAVIS, Appellant,**

v.

**Wilma J. DAVIS, Respondent.**

No. 27628.

Missouri Court of Appeals, Kansas City District.

Nov. 29, 1976.

J. Kirk Rahm, Hensley, Rahm & Rahm, Warrensburg, for appellant.

Robert E. Harris, Warrensburg, for respondent.

Before TURNAGE, P. J., and WELBORN and HIGGINS, Special Judges.

ROBERT R. WELBORN, Special Judge.

Dissolution of marriage proceeding. Trial court entered decree of dissolution. Husband has appealed from decree insofar as it divides property.

Sidney N. Davis and Wilma J. Davis were married June 23, 1957. On February 19, 1974, Sidney filed petition for dissolution of the marriage, stating that he was 46 years of age and his wife 52 and that they had separated on February 8, 1974. No children were born to the marriage. Wilma filed an answer and cross-petition for dissolution. The cause was tried in August, 1974. Sidney's evidence related the marital problems to Wilma's excessive consumption of alcohol. Wilma's evidence was designed to show indiscretion and infidelity on Sidney's part with other women during the marriage. Because neither party here relies measurably upon the misconduct factor in arriving at the division of the marital property, there is no need to consider the evidence on this score in any detail.

The evidence pertinent to the issues here raised was as follows:

Sidney was president of the Knob Noster Oil Company, Incorporated. The corporation operated a retail gasoline service station in Knob Noster and owned a bulk plant from which deliveries and sales of gasoline, fuel oil and propane gas were made to residents of the area surrounding Knob Noster. Sidney actively ran the oil company operation. He drove the truck making deliveries to farmers, worked in the drive at the service station, did "anything that is to do around the service station," and kept the books of the operation.

Sidney and his mother purchased the assets of the corporation in February, 1955, for $84,000. Shortly thereafter, the assets were transferred to the newly formed corporation. Sidney received 150 shares and his mother 50 shares. These were the outstanding shares at the time of the trial. $16,000 of the purchase price was paid to the sellers prior to the marriage of Sidney and Wilma. The final payment of $22,500 was made in 1965 from the proceeds of a loan secured by a deed of trust on farm land owned jointly by Sidney and his mother.

At the time of the trial, Sidney was receiving $6,500 per year for his services as president of the oil company. His earnings were deposited in the Bank of Knob Noster. Household expenses were paid from that account.

Wilma was a school teacher, having been so employed for 34 years. At the time of trial her annual salary was in excess of $11,000 per year and her take home pay $664 per month. She took no active part in the operation of the oil company. She was "listed" as vice-president and a member of the board of directors of the oil company

from 1963 to 1974. She received $55 per month from an affiliated corporation, K. N. Wholesale Oil Company, Inc. Sidney and his mother were the sole stockholders in K. N., Sidney owning 37½ shares and his mother 12½ shares.

A family residence at 205 West Workman in Knob Noster was purchased in 1968. At the trial the house was valued at $35,000, subject to a deed of trust securing an outstanding indebtedness of $16,470.00. The parties also owned a vacant lot adjacent to the house, valued at $700.00. Payments on the house were made by Sidney from his income until the parties' separation.

At the time of the marriage Sidney and his mother owned property on Grant Street in Knob Noster. After the marriage, Mrs. Davis conveyed her interest in the property to Sidney and Wilma. The property was sold for a net return of $13,000.00. Eventually $5,000 of that money was invested in United Utilities debentures in the names of Sidney and Wilma. Sidney also invested $1,000, plus $500 added by him, in 100 shares of the Gas Service Company. The remainder of the proceeds of the Grant Street property was used to improve the West Workman residential property.

According to Sidney, Wilma used her income for her clothes, "frilly" things, things for the house and investments. At the time of the marriage she had a 1955 Buick which was later sold. She also had $2,264.02 in a checking account which was later transferred to a joint account. When the petition was filed, there was a joint checking account in the parties' names at the Sedalia Bank and Trust Company, with a balance of $4,787.03. Sidney made no deposits in that account. Wilma testified that, during the marriage, from her earnings as a teacher and from the proceeds of property inherited from her father, she had invested $18,000 in investment notes of Sedalia Industrial Loan and Investment Company, purchased 70 shares of Nuveen Bond Fund, valued at $7,000, and shares of Founders Mutual Fund, valued at $5,121.11. She also claimed

to have purchased the United Utilities debentures and Gas Service stock, above referred to.

Wilma testified that four years previously she learned her school teaching had at that time earned her retirement benefits, payable at age 65, of $175 per month. She testified that one year earlier she had a mastectomy for a malignancy of one breast and that she feared the problem was recurring in her remaining breast. Her physician testified that an X-ray taken August 19, 1974 showed no evidence of metastasis.

At the time of the marriage, Sidney was a joint owner with his mother of a 399-acre farm. The farm was valued at $199,500, subject to a deed of trust to secure a $16,040 debt. All income from the farm went to the mother. Sidney and his mother were also joint owners of residential property in Knob Noster, valued at $16,250, subject to a deed of trust to secure a $4,625 debt. His mother resided at the property.

The trial court's decree respecting the property was as follows:

It set aside the farm and the mother's residence as the property of Sidney and his mother, with Wilma having no interest in them.

It set aside to Wilma as her sole property the following:

| Item | Value |
|---|---|
| 1972 Mercury automobile | $ 2,600 |
| 90-day investment note of Sedalia Industrial Loan and Investment Company | 10,000 |
| 5-year investment note of Sedalia Loan and Investment Company | 8,000 |
| Deposit in checking account, Sedalia Bank and Trust Company | $ 4,787.03 |

It found the following property "marital property within the meaning of the statutes" and declared that each of the parties should be owners of a ½ interest as tenants in common:

| Item | | Value |
|---|---|---|
| Residence, 205 West Workman | $35,000 | |
| Less encumbrance | 16,470 | $18,530 |
| Adjacent vacant lot | | 700 |
| Household property | | 2,500 |
| 100 shares Gas Service stock | | 912.52 |
| United Utilities Debentures | | 5,000 |
| Founders Mutual Fund Shares | | 5,121.11 |
| 70 units Nuveen Tax Exempt Bond Funds | | 7,000 |
| 16 shares Guaranty Corporation | | 70 |
| Dividends received by Sidney since separation | | 550 |
| 3 shares Knob Noster Community and Development Corporation | | 54 |

The court further found that Wilma had a "marital interest" in the assets of Knob Noster Oil Company to the extent of $40,-304.50, which was set apart to her "as her marital interest in said corporation." (The precise basis for this computation does not appear. Witness for Wilma testified to a value of the assets of the corporation of from some $132,000 to $152,000. The extent of liabilities was not shown. There was evidence of indebtedness to Sidney and his mother of approximately $40,000 and to the La Monte Community Bank of some $20,000.)

The decree also relieved Wilma of liability on any obligations with which she had joined her husband, except for the indebtedness on the residence.

On this appeal, Sidney attacks the allowance of a marital interest in the assets of the corporation and claims the over-all division of the property gives Wilma a disproportionate share of the marital property. He also attacks the decree insofar as it makes the parties owners of property as tenants in common.

Appellant's first contention is that the court erred in allowing Wilma a marital interest in the assets of Knob Noster Oil Company, Incorporated. He contends that his interest in that corporation was in the ownership of ¾ of its outstanding stock which was owned by him at the time of the marriage, and that, therefore, his interest in that corporation was not marital property.

Section 452.330 1., RSMo 1975 Supp., provides, in part:

"In a proceeding for * * * dissolution of the marriage * * * the court shall set apart to each spouse his property and shall divide the marital property * * *."

Section 452.330 2. provides:

"For purposes of sections 452.300 to 452.-415 only, 'marital property' means all property acquired by either spouse subsequent to the marriage except:

"(1) Property acquired by gift, bequest, devise or descent;

"(2) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent;

"(3) Property acquired by a spouse after a decree of legal separation;

"(4) Property excluded by valid agreement of the parties; and

"(5) The increase in value of property acquired prior to the marriage."

" * * * For purposes of the division of marital property under § 452.330, all property acquired by a spouse prior to the marriage and which remains titled in that spouse after marriage is, in the absence of clear intention to contribute that property to the community or to the other spouse, the separate property of that spouse and will not be regarded as marital property. *Conrad v. Bowers*, 533 S.W.2d 614, 624[20] (Mo.App.1975)." *Stark v. Stark*, 539 S.W.2d 779, 782[2–4] (Mo.App.1976).

The respondent here does not question that the appellant acquired his stock in the oil company prior to the marriage and does not suggest that the title to the stock was changed subsequent to the marriage. Respondent contends that the evidence showed that the parties, subsequent to the marriage, "ignored the corporate veil or entity" and that this was "conduct of the parties during the marriage" which under § 452.330

1. (4) was a circumstance to be considered by the court in dividing marital property. Reliance upon § 452.330 1. (4) is misplaced because that provision relates to consideration of "good conduct and marital misconduct" of the parties during the marriage (*Conrad v. Bowers*, 533 S.W.2d 614, 620[6] (Mo.App.1975)) and not to their dealings with respect to property involved in the marriage.

The conduct of the parties with respect to property may evidence the clear intention that separate property be contributed to the community or the other spouse. *Stark v. Stark*, supra. Here respondent points to the fact that she became a director and vice-president of the corporation. However, there was no evidence that in order to hold such positions she was required to have an interest as a shareholder in the corporation. See § 351.310, RSMo 1969. She also points to the fact that she signed notes secured by deeds of trust the proceeds of which were used in the corporate operations. These obligations were secured by the farm and the residence of the mother, set aside by the court as the separate property of appellant. The fact that respondent joined in the transactions does not evidence an intention to confer upon her an interest in the corporate stock owned by appellant. See *Stark v. Stark*, supra. The time of payment of a major part of the purchase price of the corporate assets, i. e., after the marriage, would not alter the status of the property. *Stark v. Stark*, supra; *Cain v. Cain*, 536 S.W.2d 866, 870–871 (Mo.App.1976).

Respondent also points out that she was a guarantor of the corporate obligation to the La Monte Community Bank. That fact, standing alone, is not sufficient to evidence the necessary intention on the part of appellant that the corporate stock become community property. The circumstances of the guaranty agreement do not appear. Respondent did not testify concerning the agreement. Nor did she contradict appellant's testimony that respondent refused to discuss the business with him, that she repeatedly told appellant that he was in something that was no good, that she wanted no part of the business and wished she had never heard of the company.

The evidence showed that the appellant's interest in the Knob Noster Oil Company, Incorporated, was acquired before his marriage to respondent. There was no evidence to show that the status of that property changed during the marriage and the trial court should not have considered it marital property and should not have allotted respondent an interest in the corporate assets.

Appellant's objection to the decree insofar as it made the parties tenants in common of the major portion of the marital property is meritorious.

"The new marriage dissolution law empowers the court dissolving a marriage to divide the property of the spouses, a new and significant power for Missouri courts. No longer will there be a race to the courthouse to file partition actions after a divorce; no longer will intransigent spouses have to see their property sold at the courthouse door. It is expected that the unsatisfactory half-remedy of partition will no longer be useful to divorced parties." Fowler and Krauskopf, "The Divorce Reform Act—Property Provisions," 29 Mo.Bar Journal 508 (1973).

Given the broad power of the court to accomplish the division of the marital property upon dissolution (see *Claunch v. Claunch*, 525 S.W.2d 788 (Mo.App.1975)), a division which leaves the parties tenants in common of personal property susceptible to division in kind should be avoided in the interest of preventing the unnecessary extension of disputes and ill feeling. Although resort to such device with respect to real estate probably should not be absolutely precluded, again a tenancy in common solution should be reserved for the unusual situation where the economics involved call for such a solution.

No such situation exists here. Although the trial court is entrusted with wide discretion in dividing marital property,

proper exercise of discretion involves a division except in rare instances. In the circumstances of this case, the common ownership decree of the trial court should not be permitted to stand.

 Consideration must be given appellant's further contention that the trial court's decree awarded respondent as her sole property, property which was marital property and that such error resulted in respondent's receipt of a disproportionate amount of the marital property.

The trial court did set aside to respondent as her "sole and separate property" the 1972 Mercury automobile, $18,000 certificates in Sedalia Loan and Investment Company and the money in the checking account as of August 27, 1974. All of these items were acquired during the marriage. $7,000 of the Loan and Investment certificates was traceable to an inheritance by Wilma from her father during the marriage. However, upon the investment of the $7,000, Sidney was named a joint owner of the certificate, so that the exceptions in subparagraphs (1) and (2) of § 452.330 2. are not applicable. *Conrad v. Bowers,* supra. The court erroneously set aside these items to Wilma as her separate property. The fact that the property was acquired with Wilma's inheritance and earnings would be a factor to be considered in the division of them and the other marital property, but it did not cause such property to be Wilma's sole and separate property.

This court would have the authority to direct the distribution anew of the marital property. However, practical considerations render such action unwise in this case. The matter must be remanded to the trial court for reconsideration in the light of this opinion and for a division of the marital property under the guidelines set forth in § 452.330 1. Appellant has urged that this court direct an approximately equal distribution of the marital property. This request is refused. Section 452.330 1. does not require such a distribution.

The trial court will properly assess the relevant considerations and this court will not attempt to dictate the result which will be reached.

Reversed and remanded.

All concur.