**Elmer R. HOPKINS, Respondent,**

v.

**Norma K. HOPKINS, Appellant.**

**No. WD 30823.**

Missouri Court of Appeals, Western District.

April 7, 1980.

William C. Partin, Kansas City, for appellant.

A. J. Anderson, Harrisonville, for respondent.

Before TURNAGE, P. J., and SHANGLER and MANFORD, JJ.

SHANGLER, Judge.

The wife appeals from the division of the marital property adjudicated as an incident of dissolution of marriage. The husband and wife agree that the marriage is disrupted beyond repair and do not contest that phase of adjudication. The wife contends that the apportionment of the marital property was unfair because it gave no proper account to the contribution of the wife to that acquisition nor to the misconduct of the husband, and neglected altogether to sever a common ownership in a business enterprise—held as a close corporation.

The conjugal life was for eight years, from 1968 to 1976, and after two years of separation, the husband brought suit for dissolution in 1978. At the time of marriage, each was forty-four years of age. The husband had one prior marriage, the wife none. The husband had an adult son [John] from the first union with whom he conducted a farm enterprise. The wife was employed as a computer programmer at

$1,000 per month, but discontinued that employment after more than a year of marriage to manage the family farm operation. The husband was a truck driver with gross wages of $15,000; he discontinued that employment shortly after the marriage to work the farm.

The husband and wife each brought separate property into the marriage relationship. The wife with her parents [since deceased] owned two tracts of farm land, 60 acres and 72 acres, and, in her own right, a 2½ acre tract [the Florida plot] and an 80 acre farm. These latter acreages were transferred to the joint ownership of the husband and wife during the marriage. The 80 acres and a separate city lot were sold during the marriage for their joint enterprises. The wife brought, also, some 55 cattle and a bull, plus an increment of calves, an old car and some farm equipment.

The husband brought an improved 202 acre farm, some 47 or 85 cows [as may have been found credible from contested testimony], farm equipment, and an old car.

The wife was prompted to leave her computer employment with A.T. & T. by dissatisfaction with the manner John conducted the farm business. [The husband, apparently, had resumed truck-driver employment and so was often away.] She assumed an increased responsibility and did nearly all the chores. The disaffection with John brought the husband and wife into contention, and in 1970, the father and son dissolved the joint farm operation. In year 1973, the husband and wife commenced a common carrier truck line, later incorporated as *E. R. Hopkins Truck Line d/b/a Hopkins, Inc.*, each with an ownership of one thousand shares. The wife did all the duty as to the books, accounts and checks, and the husband was both driver and operations manager. At dissolution of marriage, the corporation owned three tractors, four trailers, four PSC common carrier certificates and one ICC authority. The net value of these properties, the husband estimated, was $110,000.

The son John, alienated since the 1970 disruption of joint operation with the father, was taken on as a driver for the truck line. There soon was argument between the husband and wife over payment to John, and that conflict led to final domestic disruption. The wife ordered the husband out with a coarse vituperation [which she did not recall], and they separated.

The court adjudged dissolution and a division of the marital property. The decree set apart to the wife as nonmarital property the 60 acre and 72 acre tracts owned with the parents, and to the husband, a described farm tractor. The decree also determined and divided the marital property. The wife brought a motion for new trial or, alternatively, to amend the judgment. The grounds asserted that the division of the property was unjust and otherwise incomplete, and that the wife was kept by mistake of counsel from proof of the marital misconduct of the husband—a relevant factor by § 452.330.1(4) in the determination of a just allocation of the marital property. In response, the court set the judgment aside altogether and scheduled a hearing. On that date, the wife requested a continuance to allow the testimony of her special counsel on common carrier matters as an expert on the value of that marital asset. The court refused the continuance and by order confined the evidence on hearing to proof of marital misconduct and of assets not previously disclosed. At the hearing, the wife attempted to prove that the original order for apportionment of the truck line assets was neither reasonable nor functional. The offer of proof was refused once again. The court expressed that the evidence on marital misconduct did not dissuade the earlier proof and reentered the previous judgment with additional apportionment of several assets since disclosed.

The division of the marital assets was adjudged without attribution of value as determined fact, although the testimony as to some showed a marked disparity:

| Marital Property to the Wife: | Range of Value: | Encumbrance: |
| --- | --- | --- |
| $1000 in attorneys' fees | | |
| All livestock | $ 62,700 – $ 74,700 | $ 6,000 |
| 2½ acre Florida lot | 5,000 | |
| Cadillac | 3,300 | |
| Personal bank account | 500 | |
| Farm bank account | 200 – 300 | |
| Hay on farm | None attributed | |
| 1500 shares in Hopkins Truck Line [out of 2000 or ¾ of the total] | $150,000 – $175,000 [$75,000 – $111,750 ¾ of total] | $51,477 [Gross rate] $47,000 [Payoff rate] |
| Riding lawnmower | 900 – 1,000 | |
| Liquid cattle feed | No value attributed | |
| Liquid cattle feeder and de- scribed equipment | No value attributed | |
| Fence posts | No value attributed | |
| Right to agist cattle for the prescribed period on leased land | No value attributed | |

| Marital Property to the Husband: | Range of Value: | Encumbrance: |
| --- | --- | --- |
| 202 acre farm | $210,000 | $33,000 |
| Described farm machinery and cattle equipment | 10,200 – 15,450 | |
| Chevrolet pickup | 4,500 | |
| Personal bank account | 1,000 | |
| 500 shares in Hopkins Truck Line [¼ of total issue] | 25,000 – 37,250 | |
| Lease of one acre within the 202 acre farm for relay tower $750 per year for 30 years | No present value attributed | |
| Oral lease | No value attributed | |

The value attributed by the testimony to the marital property divided to the wife was within the range—$141,600 to $190,550, and to the husband, $217,700 to $245,200. In addition, the net value attributed to the nonmarital property set apart to the wife [the 60 and 72 acre tracts] was within the range—$189,300 to $198,000, and to the husband [a described tractor], $6,000 to $7,000.

The first error contends the court misapplied the statutory criterion of § 452.330.-1(4) that on dissolution of marriage the adjudication consider *the conduct of the parties to the marriage* as a relevant factor on the division of the marital property. The formal judgment entry recites that the evidence did not show

that either party expended marital funds or property unreasonably to the deprivation of the other party and *such evidence is incompetent* to affect the division of marital property which is hereby decreed. There was evidence that the husband drank too much and cuffed and battered the wife on occasions. The husband denied the evidence. There was evidence that, not only occasionally, the wife abused the husband with common epithets. The wife could not recall such conduct. The wife argues that the vocabulary of judgment does not give her evidence the proper effect, but confines the ground of adjudication to *financial misconduct*, and so imposes a limitation of proof the statute does not allow.

The *conduct of the parties* element of proof precedent to the division of the marital property means *general conduct*, both that which sustains and that which demeans the marriage. The misconduct—as does the good conduct—relates to the course of an action *during the marriage*

—[§ 452.330.1(4)], and is not limited by financial misdeed or any other species of misbehavior. *Burtscher v. Burtscher,* 563 S.W.2d 526, 527[1–3] (Mo.App.1978); *Butcher v. Butcher,* 544 S.W.2d 249, 255[6] (Mo. App.1977). The term of judgment the wife finds maladroit, read in full text, confirms that the court understood the statutory standard and followed direction. The argument by the wife assumes, without warrant, that her version of evidence was conclusive on the court. Our review determines, however, whether the division of the marital property rests on substantial evidence and on valid principles of law. *Murphy v. Carron,* 536 S.W.2d 30, 32[1–3] (Mo. banc 1976). The full record on the conduct element of that ultimate issue [§ 452.330.-1(4)] now before us confirms that adjudication of the conduct element precedent to the division of property [§ 452.330.1(4)] rests on substantial evidence and applies proper principles of law.

The second assertion of error contends that the order, which divides to the wife fifteen hundred shares of the Hopkins Truck Line and to the husband five hundred shares, maintains the spouse in joint ownership of that marital asset after dissolution and so violates the principle of *Corder v. Corder,* 546 S.W.2d 798 (Mo.App.1977). *Corder* [l.c. 804[9]] and subsequent authority find in § 452.330 a public policy to avoid a sequel of litigation between the spouses by a decree which divides *all* the marital property and severs "all unity of possession, as well as unity of title" to that common ownership. That principle subserves both the requirement of statute that the entire marital property be identified to the court for *one final adjudication* of the property rights between the spouses [*Ravenscroft v. Ravenscroft,* 585 S.W.2d 270, 274[6] (Mo. App.1979)] and the end which discourages the continued rancor of a disaffected marriage on display in court because of an indecisive property judgment. *Corder* follows *Davis v. Davis,* 544 S.W.2d 259 (Mo. App.1976) [l.c. 264[7]] to hold that a division of marital property judgment which does not dissever the joint ownership is the exceptional case "reserved for the unusual situation where the economics involved call for such a solution."

In strict definition, the shares of stock in the Hopkins Truck Line were owned severally by each, the husband and wife, at the time of dissolution. The order of division merely rearranged that ownership from an equal 1,000 shares each to a predominant three-fourths ownership in the wife. The marital asset, however, was not the ownership of shares, but of an ongoing business enterprise. The evidence leaves no doubt that the truck line, although in the guise of a close corporation, was merely the continuation of a business originated as a husband and wife partnership. The corporate form was adopted on advice of counsel as a device against public liability and to render applications for common carrier authority before the Public Service Commission more credible. The rationale of *Corder* [l.c. 805[10, 11]] determines that the failure of the trial court to dissolve the spousal ownership altogether in such an asset—in the absence of a specific statement by the trial court for retention of *status quo*—raises a presumption of erroneous judgment.

The question occurs, therefore, whether the record discloses a special economic concern, borne out by evidence and relied on by the court, to justify the retention of the common ownership in the truck line after dissolution so as to justify the entry of judgment.

The three most significant assets of the marriage were the 202 acre tract, the truck line and the herd of cattle. The farm acreage [$177,000 in net value] [1] was divided to the husband. A predominant three-fourths ownership in the truck line shares [$90,000

---

1. The values we attribute are for purposes of opinion. We do not undertake to find them as fact—and, indeed, are foreclosed from that initial determination by *Murphy v. Carron,* supra. The order of division was entered without attribution by the trial court as to the value of any asset—a practice which undermines an informed judgment as well as judicial review. See, *Fields v. Fields,* 584 S.W.2d 163, 166[8, 9] (Mo.App.1979) and *Ravenscroft v. Ravenscroft,* supra, l.c. 274[6]. Our opinion treats this aspect of judgment more fully.

in approximate net value] and the cattle [$74,700 in value] were divided to the wife. In terms of total value of distribution, the cattle and corporate shares were a counterpoise to the farm acreage in the division of the property. The values of the acreage and of the cattle reflected, in the context of the evidence, a ready market price. The value of the truck line, on the other hand, was given as the sum of the capital assets only,[2] and not as a going concern. There was no evidence as to the economic impact on the spouses of a disposition of a marital business property which continues them in a joint ownership of that asset even after dissolution of the marriage.

The trial court was not heedless of the distinctive character of the corporate asset, but posed inquiry during the proceedings as to the disposition of the marital property favored by the husband. The husband proposed disposition of the truck line asset to the wife because "*I can't run it by myself.*" [Emphasis added.] The wife responded that if the husband did not want the truck line, "why I would propose to buy it at a discount because *I don't feel like I'm able to run it* and hire—understand—*I do not understand the trucks well enough to handle it by myself*, so I will have to find somebody either to help me run it, or I'll have to sell it." [Emphasis added.]

The court remarked as prelude to rendition of the original judgment:

In regard to the truck line, I don't know what the truck line is worth. I think there's no question it's a substantial asset, but *what it's worth is questionable without their participation.* [Emphasis added.]

We note that on this occasion of judgment the court acted on the only evidence available for decision: the order divided the property according to the value of the capital assets. Our principle of litigation leaves to the contenders the presentation of evidence and to the court the judgment on that evidence. *Beckman v. Beckman,* 545 S.W.2d 300, 301[2] (Mo.App.1977). At that

first hearing the litigants presented no evidence on the value of the truck line as a business unit nor on the consequence of a continued common ownership. In advance of the second hearing, after the court had set aside the judgment to allow evidence of marital assets yet to be divided and testimony on marital conduct, the request of the wife for a continuance to present expert evidence of the value of the corporation was denied. The court refused thereafter during the course of hearing another offer by the wife to prove that the apportionment of the truck line assets was neither just nor feasible. The rejection of that evidence, calculated to allay the misgiving of the court at rendition of the initial judgment—"I don't know what the truck line is worth"—was ill-advised.

The effect of the retained joint ownership of the truck line was also before the court, by argument if not by evidence. The reason ascribed for that judgment was simply: "I would say, in regard to Mrs. Hopkins' skills or strengths, or whatever, I think she's a very strong woman, and I think she's a very capable woman. I wouldn't make the division I make if I didn't feel so." The court discounted that difficulty would follow from the present status of the husband as president of the corporation: "In regard to the problems of his being the president, and she being the majority shareholder, they have operated the truck line since 1976, the date of their separation without too much problem. They have been able to get it accomplished, and I really don't foresee much change in that area." That conclusion was more surmise than empirical fact. The evidence was that the spouses continued the operation of the truck line since separation until dissolution, but not without acrimony or incident. Nor does evidence of spouses on the verge of a dissolved marriage who nevertheless continue to operate a joint asset profitably during that forced interim present a model for a just solution. The reasons given for the perpetuation of the joint ownership—

---

**2.** Tractors: $65,000; trailers: $56,000; four P.S.C. certificates: $40,000; one ICC authority: $15,000—total: $176,000, less encumbrance of $51,477 (gross) or $47,228.20 (payoff rate).

that the wife was strong and capable and that the spouses managed to operate since separation—fall short of those unique economic considerations which alone justify retention of the common ownership of marital property after dissolution. *Corder v. Corder*, supra, l.c. 805[10, 11]; *Davis v. Davis*, supra, l.c. 264[7]. Nor was the division finally adjudged in response to a concurrence. The husband rejected the asset altogether and proposed allocation to the wife. The wife accepted on condition that the help to operate the asset sole ownership would entail, be taken into account by a discounted value in the total division. Neither acceded to a continued joint ownership.

■ The decisions on the disposition of shares in a close corporation as a marital asset assume the implicit premise that the productivity—and hence continued value—of such a business property rests on a congenial unity between ownership and management. *Naeger v. Naeger*, 542 S.W.2d 344 (Mo.App.1976); *Snider v. Snider*, 570 S.W.2d 770 (Mo.App.1978); *Beckman v. Beckman*, supra; *Cain v. Cain*, 536 S.W.2d 866 (Mo.App.1976); *Butcher v. Butcher*, supra. *In no case* has a court upon dissolution of marriage continued a separate ownership of either the recent husband or the recent wife in such a business estate; rather, either the one or the other was divested of the corporate shares for a compensated value. *In re Marriage of Schulte*, 546 S.W.2d 41 (Mo.App.1977); *Spicer v. Spicer*, 585 S.W.2d 126, 128[2] (Mo.App.1979).

■ The truck line was a typical close corporation.[3] The operation started as a husband and wife partnership but, for some usual reasons, took on the corporate form of business enterprise. The proprietary manner of the conduct of business continued without change from the partnership to the corporation: the equal direct ownership under the partnership became an equal ownership of the shares of the corporation; the husband continued his management of operations and maintenance [as driver and mechanic] and the wife continued her management of books and accounts, as dispatcher and as liaison with the corporate attorney. In the nature of such a business form, the shares are closely held, and not publicly traded, with the consequence that there is neither a market nor market value for the shares.[4] *In re Marriage of Schulte*, supra, l.c. 45, 46[2]; Krauskopf, *Marital Property At Marriage Dissolution*, 43 Mo.L.Rev. 157, 162 (1978); 1 O'Neal, Close Corporations § 1.07 (2d ed.). That means that a vexed shareowner could withdraw from the close corporation only at financial loss. That means also that a minority interest in a close corporation is even more vulnerable to economic loss, both as a matter of initial evaluation and as a matter of disposition. See, Missouri Corporate Practice, Chapter 4 (Mo. Bar C.L.E. Series 1973); 1 O'Neal, Close Corporations § 1.07 (2d ed.); *In re Block's Will*, 186 Misc. 945, 60 N.Y.S.2d 639, 642[1] (1946). The certainty of a diminished value for the interest of a disaffected close corporation shareholder becomes even more probable in Missouri which, unlike numerous other states, does not facilitate the business of such an enterprise or protect a minority holder from oppression by a close corporation statute. See, 1 O'Neal, Close Corporations § 1.14 (2d ed.); Missouri Corporate Practice, Chapter 4 (Mo. Bar C.L.E. Series 1973). A sole shareholder, on the other hand, becomes vulnerable neither to dispute nor to the vagary of value of ownership.

---

**3.** An accepted definition of close corporation, cited in 1 O'Neal, Close Corporations § 1.02 (2d ed., 1979 Cum.Supp.) as typified by: (1) a small number of stockholders, (2) no ready market for the corporate stock, and (3) substantial majority stockholder participation in the management, direction and operations of the corporation. *Donahue v. Rodd Electrotype Co. of New England, Inc.*, 367 Mass. 578, 328 N.E.2d 505, 511 (1975).

**4.** The methods to evaluate shares in a close corporation, of course, are not exclusive. See, *Beckman v. Beckman*, supra, l.c. 301[2]. The informative Krauskopf article suggests corporate earnings as a reasonable basis for that determination. That was one of the methods used in *In re Marriage of Schulte*, supra, l.c. 45, 46[2]. The only evidence as to value of the truck line was the composite of the tangible assets.

The lessened risk of litigation which the imperative of *Corder* and *Davis* encourages, therefore, does not aim at social amity only, but also at the likely economic disadvantage to both recent spouses that a continued common ownership of the marital property augurs. The incipiency of dispute already appears from the order of division of the truck line shares decreed between the husband and wife. At the time of dissolution, the husband, owner of an equal one thousand shares, was the president of the corporation. To the inquiry of counsel for the wife as to whether the husband would be required to resign that office in view of the decree to the wife of the majority shares, the court responded: "No. You know, she's got the majority shares. If she wants to vote him out, she can vote him out." The authority of the husband to write checks against the business and other facets of management also went without redefinition by decree but were left to the formal devices of corporate law and practice.

The order of division of the marital property gives no reason to continue the common ownership of the recent husband and wife in the corporation. The evidence shows no economic exigency avoided or advantage gained by either spouse from that disposition. On remand, the parties are well advised to assist the court by a more ample presentation of evidence on the value of the corporate asset.

■ The wife contends also that the division of the marital property was unjust in that the distribution did not fairly reflect her contribution to the marital estate. The judgment ascribes no value to any of the marital property adjudged to each spouse. The evidence of present value was disparate as to the most substantial items of property and not even inferable for others, the tower lease among them. The statute [§ 452.330.-1] enjoins upon the court to derive a *just* division of the marital property. The fairness of a property distribution can be assessed only in terms of value. The question of fairness, therefore, may be determined— within the proper scope of review—only upon the fact of value given in the evidence

and determined by the court. Rule 73.01; *Murphy v. Carron*, supra, l.c. 32[1–3]. For that reason, § 452.330.1 requires a judgment which identifies all the marital property, values, and divides each asset. The record before us lacks a necessary element of adjudication and so remains incomplete as a judgment. *Ravenscroft v. Ravenscroft*, supra, l.c. 274[6]; *Fields v. Fields*, supra, l.c. 166–167[8–12]; *In re Marriage of V.M.*, 526 S.W.2d 947, 951[9] (Mo.App.1975).

■ The rule of decision in *Murphy v. Carron* removes from a court of review de novo determination of fact in a case tried to the court. That initiative rests with the trial court alone. A record which shows a disputed but judicially undetermined value of a marital asset remains a disputed issue. *Murphy v. Carron* places beyond the power of a court of review to make that finding in the first instance. Nor does the principle that all fact issues are assumed as found in accordance with the result reached by the court [*Noland v. Noland*, 527 S.W.2d 696, 698[1] (Mo.App.1975)] complete the lapsed proof of value. That rule has a more ready application where the purpose of judgment is to favor one litigant above the other than where, as by § 452.330.1, a *just* judgment must be found. The fairness that statute demands is an equitable distribution of the *economic value of the marital assets* according to the prescription of that law—and so, inevitably, rests on value as a fact proven and found by judgment. Fowler and Krauskopf, *The Divorce Reform Act—Property Provisions*, 29 J.Mo.Bar 508 (1973); *Corder v. Corder*, supra, l.c. 805[10–11] and cases annotated under § 452.330.1.

The rules of procedure do not impose duty upon a court, absent request, to make formal findings of fact, nor does § 452.330 enjoin that duty as a matter of procedure. *Stark v. Stark*, 539 S.W.2d 779, 781[1] (Mo. App.1976). The substantive demand of that statute for a *just* division of the marital property, nevertheless, cannot be acquitted without an antecedent identification of the marital property, determined as to kind and value. *Ravenscroft v. Ravenscroft*, supra, l.c. 274[6]. The statute does not require a

formal opinion of grounds for decision [*Stark v. Stark*, supra, l.c. 781[1]], but does demand that the statutory premises for a *just judgment* be met—to "divide the marital property in such proportions as the court deems just"—a decree which divides the assets of the marriage by description and value. *Doyle v. Doyle*, 577 S.W.2d 64, 68[7] (Mo.App.1979); *In re Marriage of V.M.*, supra, l.c. 951[9]. A judgment which accomplishes less remains incomplete and open.

The court also awarded the wife $1,000 as counsel fee. That award is a separate judgment by statute and does not concern this appeal. *Dyche v. Dyche*, 570 S.W.2d 293, 296[3–4] (Mo. banc 1978).

The judgment for division of the marital property is reversed and remanded.

All concur.