Eugene J. GLOSIER, Sr.,
Petitioner/Respondent,

v.

Patrisha S. GLOSIER,
Respondent/Appellant.

No. 57191.

Missouri Court of Appeals,
Eastern District,
Division Two.

Aug. 27, 1991.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Sept. 25, 1991.

Application to Transfer Denied
Nov. 19, 1991.

Thomas J. Frawley, Lawrence G. Gillespie, Webster Groves, for respondent/appellant.

Claude C. Knight, St. Charles, for petitioner/respondent.

GARY M. GAERTNER, Presiding Judge.

Wife, Patrisha Glosier, appeals an order of the Circuit Court of St. Charles County dissolving her ten year marriage to husband, Eugene Glosier. Wife alleges the circuit court erred in its distribution of certain marital property and in ordering the sale of the marital residence. We affirm in part and remand for an order quieting title in real property.

The parties were married on November 24, 1978. Husband, at this time and throughout the marriage, was self-employed as a grading contractor. Although wife was trained to be a dental assistant, the evidence reveals she has not been steadily employed since approximately 1976.

During the course of the marriage, husband acquired a limited partnership interest in "Bull Farm." Bull Farm is a real estate venture in St. Charles County which currently owns about 8.76 acres of land with a value of approximately $1,260,000. This property is encumbered by a deed of trust of $756,000, leaving a net value of the property of $504,000. The trial court found husband's interest in the property amounts to 26.5 percent and, after deductions for amounts owing to the partnership, valued husband's interest at $60,000. Although wife states in her brief "it is difficult to determine how the trial court valued the partnership interest as it did," wife does not challenge this valuation on appeal.

In January or February of 1979, the parties moved into a house on Treetop Drive in the Ivy Meadows subdivision in St. Charles County. The evidence indicated, prior to 1983, the parties rented this house from Ranny Harris. On November 22, 1983, husband signed a purchase agreement with Mr. Harris relating to the Treetop property. As part of the purchase agreement, husband gave Mr. Harris a promissory note for $15,527.00 as earnest money. This note came due on November 22, 1984, at which time the parties and Mr. Harris were to close on the Treetop property.

In addition to signing the purchase agreement, husband and Mr. Harris also executed a "possession agreement." Under the terms of this agreement, Mr. Harris was to be paid $544.74 per month by the parties for their possession of the Treetop residence until the date of the closing.

November 22, 1984, came and went without husband paying the sum due on the earnest money note or closing on the Treetop residence. The parties did, however, continue to live there. In September, 1985, the parties ceased making possession payments on the house.

During the Summer of 1986, Mr. Harris requested the closing take place and payments be brought up to date. When neither occurred, Mr. Harris, on October 20, 1986, stated the money due had to be paid in full by the end of the month or eviction proceedings would start. Mr. Harris contended a total amount of $31,486.00 was due.

On October 31, 1986, husband's son, Tom Glosier, paid Mr. Harris a cashier's check for $31,000.00. Tom Glosier then took out a loan from Mark Twain Bank for $72,000.00. Approximately $44,700.00 of this loan went to pay off Mr. Harris' mortgage on the Treetop residence and for closing expenses. The remaining $27,300.00 was kept by Tom Glosier to reimburse him for part of the $31,000.00 used to pay his father's note to Mr. Harris. Tom Glosier closed on the home on December 5, 1986. The only names on the deed to the Treetop residence are those of Tom Glosier and his wife Cathy.

Tom Glosier testified at trial he and his father decided to treat Tom Glosier's purchase of the Treetop residence as a loan.

They agreed, so long as the parties paid Tom and Cathy $610.00 per month for the home's mortgage payments, the equity in the home would belong to the parties. The parties made only three such payments.

On November 15, 1986, husband moved out of the Treetop residence. On January 12, 1987, husband filed his petition for dissolution of marriage. An amended petition was filed on March 20, 1987. This petition also asked the court to quiet title to the Treetop residence claiming that equitable title to the Treetop property rested in husband and wife. The answers of both wife and Tom Glosier also asked the court to quiet title to the Treetop property in their favor.

A trial was held on the petition on November 30, and December 1, 1988. On May 26, 1989, the trial court issued its decree of dissolution. In its decree, the court ordered the Treetop residence sold. The proceeds of the sale were to be distributed to Tom and Cathy Glosier and be used to pay off the mortgage of the home. Any remaining net proceeds were to be split equally between the husband and wife.[1] The trial court also declared, with respect to Bull Farm: "[T]he court finds that the parties are possessed of approximately 26.5 percent interest therein, and husband is hereby given the option of paying to the respondent, the sum of $30,000.00 within thirty days, to buy her interest out of same; and if he does not do same within said thirty days then respondent is given the same option thereafter, within the thirty day period to purchase petitioner's interest for $30,000.00, and if neither party exercises said option, then said property shall remain ½ interest in same to each party as tenants in common." This appeal followed.

Wife first claims the trial court erred in finding the parties only owned 26.5 percent of Bull Farm and in providing a buy-out procedure that could result in leaving the parties as tenants in common.

The evidence adduced at trial reveals husband was originally possessed of a 30

percent interest in the Bull Farm property. Tom Glosier had a 15 percent interest in the property. To acquire their interest, husband and Tom paid a fee of 7½ percent of their respective interests in the property to Paul Londe, a friend of Tom Glosier's. In return, Paul Londe helped Tom Glosier and husband secure financing for the project. In the Spring of 1987, Tom Glosier sold his 15 percent interest in the Bull Farm property. Some of the proceeds of this sale were used to pay Paul Londe his entire 7½ percent interest, including the portion that husband was responsible for. In return, Tom Glosier took an interest in husband's 30 percent interest which the trial court found to be 3½ percent of the total project.

Wife contends that the trial court should not have believed Tom Glosier's testimony to this effect because it was not supported by any documentation. The credibility of witnesses and the weight to be given their testimony is a matter for the trial court, which is free to believe none, part or all of their testimony. *Herbert v. Harl*, 757 S.W.2d 585, 587 (Mo. banc 1988). We find substantial evidence to support the trial court's determination. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

Wife also contends that the trial court erred in its distribution of the Bull Farm property. In support of her argument, wife relies on *Davis v. Davis*, 544 S.W.2d 259 (Mo.App., K.C.D.1976); *Corder v. Corder*, 546 S.W.2d 798 (Mo.App., K.C.D.1977); *Hopkins v. Hopkins*, 597 S.W.2d 702 (Mo.App., W.D.1980); and *Whaley v. Whaley*, 805 S.W.2d 681 (Mo.App., E.D.1990).

*Davis* was apparently the first Missouri case discussing the issue of whether a trial court could leave parties as tenants in common to marital property in dissolution proceedings. In *Davis*, the trial court left the parties tenants in common of a major portion of the marital property. In reversing and remanding with directions, the *Davis* court noted:

1. According to the testimony at trial, the upper value of the Treetop residence is $90,000.00. As the mortgage on the home at the time of trial was approximately $74,000.00, and the pay-

ments due Tom and Cathy Glosier exceeded $21,000.00, it is extremely unlikely there will be any "remaining" net proceeds to be split between the parties.

A division which leaves the parties tenants in common of personal property susceptible to division in kind should be avoided in the interest of preventing the unnecessary extension of disputes and ill feeling. Although resort to such device with respect to real estate probably should not be absolutely precluded, again a tenancy in common solution should be reserved for the unusual situation where the economics involved call for such a solution.

*Davis*, 544 S.W.2d at 264. As noted in *W.E.F. v. C.J.F.*, 793 S.W.2d 446 (Mo.App., E.D.1990), *Davis* only disapproved of leaving personal property "susceptible to division in kind" in tenancy in common. Real estate, on the other hand, could be left in common if the parties' situation was "unusual." *W.E.F.*, 793 S.W.2d at 458.

Two months after the *Davis* decision, the Kansas City District of this court extended the "unusual situation" exception for maintaining tenancy in common ownership of property in dissolution cases. *Corder*, 546 S.W.2d 798 (Mo.App., K.C.D.1977). In *Corder*, the Kansas City District abandoned the distinction between personal property and real property and held that a tenancy in common solution could be proper in "unusual situation[s] . . . because of the 'economics involved.'" *Corder*, 546 S.W.2d at 805. The *Corder* court also directed trial courts to state the reasons for distributing marital property in common in the dissolution decree. *Id.* The failure to give reasons for doing so resulted in a presumption of erroneous judgment. *Hopkins v. Hopkins*, 597 S.W.2d 702, 706 (Mo. App., W.D.1980).

Although this district agreed that parties in dissolution proceedings should not be left as tenants in common of marital property, *Murray v. Murray*, 614 S.W.2d 554, 556 (Mo.App., E.D.1981), this court disagreed with the Western District on the standard of review to be used when a trial court failed to give reasons for leaving property in common. Rather than presume error where no reasons were given, this court has, instead, reviewed the trial court's order pursuant to the standard set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), and has affirmed the

judgment of the trial court if the record supports the trial court's actions. *Murray*, 614 S.W.2d at 556; *Washington v. Washington*, 763 S.W.2d 714 (Mo.App., E.D.1989). The Southern District of this court has agreed with this district and has also applied the *Murphy v. Carron* standard. *Reeves v. Reeves*, 768 S.W.2d 649, 652 (Mo.App., S.D.1989).

Wife directs this court to *Whaley v. Whaley*, 805 S.W.2d 681 (Mo.App., E.D.1990), and contends that this court has abandoned the *Murray* standard of review in favor of the standard applied by the Western District. We disagree. There is nothing in the *Whaley* opinion indicating that this court has abandoned *Murray*. The *Whaley* court merely noted that there was no unusual situation involved and that the economics in the *Whaley* case did not call for a tenancy in common. The *Whaley* court, therefore, reversed that part of the trial court's order. It did not, however, overrule or abandon *Murray*.

■ The present case, unlike *Whaley*, does contain unusual economic circumstances from which this court may affirm the judgment of the trial court. The Bull Farm property was the most substantial marital asset. The record reveals that, at the time of trial, neither party had the money necessary to buy out the interest of the other. If property could not be left in common, the only alternative for the trial court, therefore, would be to make a distribution of property that would have left one of the parties with a grossly disproportionate amount of marital property. We believe that this supports the trial court's decision to leave the property in common.

We find additional support for affirming the trial court in *Reeves v. Reeves*, 768 S.W.2d 649 (Mo.App., S.D.1989). In *Reeves*, the trial court distributed several pieces of property to the parties as tenants in common. After holding that the distribution was not erroneous under *Murray*, the Southern district further noted "Moreover, there was an underlying reason why [appellant] cannot successfully invoke the above general rule [that property not be distributed as tenants in common]. The parties commendably prepared a detailed list of their assets. This list included the

distribution each party proposed of each of those assets ... The distribution of these items suggested to the trial court by the husband *and by the wife* was 'fifty/fifty.'" *Reeves,* 768 S.W.2d at 652 (emphasis in original). We are presented with a similar situation in the present case. The record reveals, and the brief of wife indicates, that when the wife was asked how she wanted the Bull Farm property to be distributed, she responded that she wanted fifty percent of the Bull Farm property. The trial court's distribution of the Bull Farm property to the parties as tenants in common had the effect of granting the wife's request. Having requested the distribution awarded by the trial court, wife cannot now complain. Point denied.

Appellant next contends that the trial court erred in directing the sale of the marital home and in its distribution of the proceeds of the sale. We agree.

■ A suit to quiet title is a statutory cause of action to adjudicate the respective estates, titles and interests of several claimants to land. *Moss v. Moss,* 706 S.W.2d 884, 887 (Mo.App., W.D.1986); RSMo § 527.150 (1986). In the present case, the court failed to expressly quiet the title of the real estate. Instead, the trial court ordered the property sold and ordered a distribution of the proceeds. In their briefs on appeal, the parties apparently disagree as to how the trial court implicitly quieted title. Wife appears to argue that the court quieted title in husband and wife and then, erroneously, ordered the home sold. Husband argues that the trial court quieted title in Tom Glosier and the distribution of proceeds is consistent with the agreement husband had with Tom Glosier, i.e. that Tom Glosier got his equity out of the home and any remaining equity belonged to the parties. Husband then argues that the court's judgment was an attempt by the court to "extract these parties from a difficult economic situation as best the trial court could within its jurisdiction."

There is no evidence supporting an order quieting title solely in husband and wife. There is evidence, however, that would allow the court to quiet title either in Tom and Cathy Glosier, or in the names of Tom and Cathy Glosier and husband and wife.

In the former instance, the order to sell the property would certainly be unwarranted; in the latter instance, the order selling the property would be within the discretion of the trial court upon the trial court's finding that the property could not be divided in kind, and upon finding that the sale would be in the best interest of one or both of the parties. *In re Marriage of Usrey,* 781 S.W.2d 556, 561 (Mo.App., S.D.1989). In addition, in the latter case, we believe it would be in the trial court's discretion to order that a portion of the proceeds be used to reimburse the debt the parties owed to Tom and Cathy Glosier for paying off the mortgage on the home and in paying off the debts of the parties. See *Harper v. Harper,* 764 S.W.2d 480, 482–83 (Mo.App., E.D.1989). As the trial court did not quiet title in any of the parties, however, we feel a remand is necessary for such an order on this point.

Affirmed in part and remanded for an order not inconsistent with this opinion.

CRIST and AHRENS, JJ., concur.