JAMES M. DOWD, Judge
I respectfully dissent.
Missouri law makes one thing abundantly clear: the two embryos at issue in this case are human beings with protectable interests in life, health, and well-being. § 1.205.[1] The majority cannot square its holding with the law. Nor can it square its holding with §§ 188.010 and 188.015(3) and (10), providing that all humans, born and unborn, have the right to life; that unborn children include the offspring of human beings from the moment of conception through every stage of biological development, including the human conceptus, zygote, morula, blastocyst, embryo, and fetus; and that conception is defined as the fertilization of the ovum of a female by a sperm of a male.
It is undisputed that conception occurred in this case with respect to the two embryos at issue. The parties knowingly and voluntarily created these two embryos (in fact, they created four of them, two of which were implanted and brought to term and are now the parties’ two young sons). By that act, they made the reproductive decision that the majority asserts has yet to be made. However, the majority misconstrues Missouri law’s clear dictate that the lives of these embryos as human beings began at the moment of conception, and instead finds that the embryos in this case are “marital property of a special character.” There is no such classification in Missouri law, in its dissolution of marriage statutes or elsewhere, see § 452.000 et seq and none of the Supreme Court decisions cited or reasoning provided by the majority justifies the trial court’s or the majority’s finding that the embryos are actually property. Indeed, the Thirteenth Amendment removes all human beings from the category of property.
Therefore, I would find that the trial court erred as a matter of law in classifying the unborn children—living human beings under Missouri law—as marital property.[2]
*159 The majority rests its characterization of the embryos as property, and its denial of their right to life in this case, on the “subject to” language of subsection 2 of § 1.205, which provides that the “rights, privileges, and immunities” of “unborn children at every stage”—including the right to life, shared (under § 1.205 as applied to Missouri and federal law) with “other persons, citizens, and residents of [Missouri]”—are “subject ... to the Constitution of the United States, and deci-sional interpretations thereof by the United States Supreme Court.” The majority concludes that the holdings of Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972), and other similar eases forbid us from applying in this case the declaration in § 1.205 that life begins at conception, or the statute’s provision that embryos shall have the rights of citizens of Missouri.
In support of this conclusion, the majority cites merely the broad dicta—not the far more limited holdings—of these Supreme Court opinions. See Roe v. Wade, *160 410 U.S. 113, 152-3, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (stating that the right of personal privacy extends to intimate activities and decisions relating to “marriage,” “procreation,” “contraception,” and “family relationships,” but holding only that a pregnant woman has a limited right to make her own decision whether to terminate her pregnancy); Eisenstadt v. Baird, 405 U.S. 438, 453, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972) (proclaiming that “if the right of privacy means anything, it is the right of the individual, married or single, to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child,” but holding only that a ban on distributing contraceptives to unmarried persons is unconstitutional); Obergefell v. Hodges, — U.S. -, 135 S.Ct. 2584, 2599, 192 L.Ed.2d 609 (2015) (declaring that “[cjhoices concerning contraception, family relationship, procreation, and childrearing ... are protected by the Constitution” and are “among the most intimate [decisions] that an individual can make,” but holding only that same-sex couples must be permitted to exercise the right to marry). None of these authorities addressed the issue here and certainly none supports the majority’s finding that the embryos here are inanimate objects.
And clearly, under § 1.205 mere dicta are not enough to override the Missouri General Assembly’s judgment that the life—and right to life—of each human being begins at conception. Nor can it be gainsaid that any reproductive decision of constitutional import remains to be made by Gadberry. He has already exercised his reproductive rights under the Constitution and Supreme Court precedent. The majority maintains that Gadberry somehow still has such a right—a right to change his mind after creating the embryos—but he does not. It is too late for him. He chose to create these two embryos and they are human lives under Missouri law.
Moreover, the only United States Supreme Court case to address the life-begins-at-conception language of § 1.205, Webster v. Reproductive Health Servs., 492 U.S. 490, 506-07, 109 S.Ct. 3040, 106 L.Ed.2d 410 (1989), did not find that language to be in conflict with the Constitution or Supreme Court precedent, but instead left it to the courts of Missouri to decide § 1.205’s applicability to other state statutes. Every Missouri court that has done so thus far has found it to be applicable to other state statutes and to be constitutional. See Connor v. Monkem Co., Inc., 898 S.W.2d 89, 93 (Mo.banc 1995) (holding that, pursuant to § 1.205, a wrongful death claim under § 537.080 may be stated for a nonviable unborn child); State v. Knapp, 843 S.W.2d 345, 350 (Mo.banc 1992) (holding that the provisions of § 1.205—that unborn children are to be considered living human beings, and that they are to receive the same rights as other Missourians, subject to the Constitution and Supreme Court precedent—make unborn children persons for purposes of the involuntary manslaughter statute); State v. Rollen, 133 S.W.3d 57, 63 (Mo.App.E.D. 2003) (holding that that an unborn child is a person for purposes of the second-degree felony murder statute); State v. Holcomb, 956 S.W.2d 286, 291 (Mo.App.W.D. 1997) (holding that an unborn child is a person for purposes of the first-degree murder statute).
The majority seeks to rewrite these Missouri authorities to limit their holdings to in útero children only. Those authorities have no such limitation, nor does § 1.205.
Consequently, I disagree with the majority’s denial of the rights of the unborn children in this case. Further, I disagree with the majority’s presumption that Gad-berry’s interests outweigh those of his un *161 born children. On review, I have found that none of the Supreme Court decisions cited by the majority, nor any other decision of our nation’s highest court, has established outside of the abortion context (inapplicable here) that the rights of unborn children under § 1.205 or any similar law are outweighed by the interest of a parent in not wanting to bring a child to term; and even within the abortion context, only the mother has any interest of constitutional magnitude in terminating her pregnancy and electing not to give birth to the child.
Here, Gadberry roots around for a constitutional right of a father to stand in the way of the further development of embryos he helped produce. But laying aside the conjecture about future Supreme Court decisions, the fact remains that the Court has never interpreted the Constitution in the manner suggested by Gadberry. The broad right of “procreational autonomy” that Gadberry seeks to claim for himself—and that the majority finds only in a Tennessee case, Davis v. Davis, 842 S.W.2d 588 (Tenn. 1992), that is not persuasive, applicable, or even helpful because it did not involve a law like § 1.205 (establishing that embryos are human being with the right to life) and thus did not reference or regard the interests of the cryopre-served embryos at issue therein—cannot be found in the Constitution and exists in Supreme Court precedent as yet only in dicta. The Supreme Court has not yet carved out a place in our constitutional firmament for that broader right, to be contrasted with the narrower rights heretofore set in place by actual holdings of the Court.
Finally, I have found no specific provisions in the statutes or Constitution of this state that limit the rights provided to the embryos in this case by § 1.205.1 acknowledge the complexities of this case and the implications of the course of action I propose. But the law’s supposed inadequacies with respect to how to deal with embryos as children in the dissolution of marriage setting does not justify this Court ignoring the clear dictates of § 1.205.
For these reasons, I would apply § 1.205 to the applicable child custody provisions and would reverse and remand for such a determination.

. All statutory references are to RSMo 2012 unless otherwise indicated.

. The majority’s characterization of the unborn children in this case as "marital proper *159 ty of a special character," in recognition of their potential to become born children, represents at least a partial acknowledgement on the part of the majority of some of the principles expressed in § 1.205. But the majority cannot have it both ways. Under § 1.205, the embryos here cannot be both property and human lives or, as the majority posits, potential human lives. Those two notions are antithetical and unsupported by Missouri law given § 1.205’s clear dictates.
Also, even if the unborn children here could properly be characterized as “marital property of a special character”—i.e., even if such a category did exist under Missouri law—the trial court’s judgment awarding them jointly to Gadberry and McQueen is not, as the majority claims, authorized by § 452.330.1, which provides in relevant part that "[i]n a proceeding for dissolution of the marriage ... the court ... shall divide the marital property and marital debts in such proportions as the court deems just after considering all relevant factors .... ” (emphasis added). The majority cites in support of the trial court’s joint award three Missouri cases, Glosier v. Glosier, 817 S.W.2d 580, 581, 583-84 (Mo.App.E.D. 1991), W.E.F. v. C.J.F., 793 S.W.2d 446, 458-59 (Mo. App.E.D. 1990), and Murray v. Murray, 614 S.W.2d 554, 556 (Mo.App.E.D. 1981), none of which actually stands for the principle that it is within the trial court’s discretion under § 452.330.1 to simply refuse to divide marital property in a dissolution case "in unusual circumstances where the property cannot be justly divided.”
Instead, these cases hold that various trial courts’ divisions of marital property held as tenants by the entirety into property held in separately allocated proportions as tenants in common, were not erroneous—i.e., the court did not need to take the further step of requiring that one of the parties buy out and thus extinguish the interest of the other party in the property—because these divisions were made in unusual economic circumstances or where the property was not susceptible to division in kind. See Glosier, 817 S.W.2d at 583-84 (awarding the parties each one-half interests in marital real property as tenants in common because it was their "most substantial marital asset,” "neither party had the money necessary to buy out the interest of the other,” and “the only alternative ... would be to make a distribution of property that would have left one of the parties with a grossly disproportionate amount of marital property”); W.E.F., 793 S.W.2d at 458-59 (awarding the parties an 80% interest and a 20% interest, respectively, as tenants in common of a financial instrument known as a "wrap note,” where there was "no evidence that the 'wrap note’ [was] ‘susceptible to division in kind’ ” and the economics involved did not call for in-kind division because the wrap note was "subject to [a bank’s] security interest” and there was "no evidence that [the party challenging the award] ha[d] sufficient current liquid assets to pay the note”); Murray, 614 S.W.2d at 556 (awarding the parties a 60% interest and a 40% interest, respectively, as tenants in common of the marital home, where such was “the only substantial marital asset,” "neither party had sufficient money to immediately purchase the other party’s interest in the property,” and the property was not susceptible to division in kind).